Carey M. HOROWITZ,
Petitioner-Appellee,

v.

C. Murray HENDERSON, Warden
Louisiana State Penitentiary,
Respondent-Appellant.

No. 74–2759.

United States Court of Appeals,
Fifth Circuit.

June 12, 1975.

Henry N. Brown, Jr., Asst. Dist. Atty., Charles A. Marvin, Dist. Atty., Benton, La., William J. Guste, Jr., Atty. Gen., Baton Rouge, La., Barbara B. Rutledge, Asst. Atty. Gen., New Orleans, La., for respondent-appellant.

James B. Wells, Bossier City, La., for petitioner-appellee.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

**JOHN R. BROWN, Chief Judge:**

Horowitz sold 2 grams of methamphetamine, a controlled dangerous substance, to two Louisiana undercover agents. The officers located Horowitz through Harold Williford. Both were charged with distribution offenses, and scheduled for separate trials in Bossier Parish, Louisiana. Williford retained an attorney—whom we refer to as the attorney—while Horowitz elected to have counsel appointed for him by the Court. Coincidentally, the same attorney was appointed. The District Court found his representation of Horowitz was ineffective, and we agree.

Both men were free pending trial, and met at least once to discuss their situation. It is apparent from the record that Horowitz was at least uncertain during this pre-trial period about what he should do. There is a great deal of conflicting evidence as to who talked to whom, about what, and for how long. The District Court's view of the case made detailed findings resolving these questions unnecessary. For it does clearly appear Horowitz eventually decided to plead guilty to the charge against him, and to testify on behalf of Williford at his trial—to the effect that he, Horowitz, was the sole guilty party to the transaction.

The extent of the attorney's participation in this decision is, of course, disputed. Horowitz, on the one hand, contends the attorney urged his non-fee-paying client to cast himself to the wolves to save the fee-paying client. The state contends the attorney's part was purely passive—that Horowitz knowing full well the potential consequences, came to his own decision and told the attorney he wanted to do all he could for Williford—and the attorney then did his best for both.

The morning of Williford's trial, Horowitz pleaded guilty, and his sentencing was deferred. As a witness in Williford's defense, Horowitz testified on direct examination as planned. But on cross-examination, as should have been expected, the State explored Horowitz' testimony by asking several questions about his drug-related experiences. In response to this questioning, Horowitz was forced to reveal a rather extensive acquaintance with illegal drug activity.

Finally, when Horowitz was sentenced on his guilty plea, he suffered the maximum penalty (10 years at hard labor)—even though he had no serious record of criminal convictions.[1] The record of the state habeas corpus proceeding shows the extent of Horowitz' contacts with his appointed attorney was disputed. Nevertheless, it appears quite clearly that the attorney never clearly advised Horowitz the extent to which his past criminal activity might be proved in Williford's trial.[2]

---

1. The same Judge presided over all the proceedings described above. However, our narration should not be taken as impugning his judgment in sentencing. The sentencing Judge, even had he not presided over the Williford trial, would nevertheless have been entitled to take judicial notice of proceedings in open court. And it can hardly be argued that the United States Constitution would be offended by a sentencing Judge's considering a defendant's past criminal conduct—though there have been no convictions—in passing sentence judgment.

2. That testimony included the following on cross-examination:

   Q And you admit you did sell them this (speed)?
   A Yes sir.
   Q How did you know it was speed?

   \*    \*    \*    \*    \*    \*

   A Well, I just knew it was at the time, I tasted it, I could tell.
   Q You've used it before, haven't you?
   A Yes sir, I knew that I had.
   Q So you are experienced in this field, you know it is speed.
   A Yes sir.
   Q And you tasted it and you tested and you knew it was speed?
   A Yes sir, I did.
   Q So, you would be testifying today that these two grams that you sold these police officers are, in fact, an illegal drug?
   A Yes sir.
   Q What you call speed. And you can testify to that through experience?
   A Yes sir.

   \*    \*    \*    \*    \*    \*

   Q What about one loose needle and a syringe, did you have that in your guitar case?

■ At oral argument the State contended quite strongly that the District Court's granting Horowitz' petition was improper because no opportunity was given for either a hearing or oral argument.[3] While this is true, an examination of the record shows this complaint is ill-taken, because Louisiana got exactly the procedural treatment it asked for. The District Judge *did* order an evidentiary hearing on the ineffective-counsel issue,[4] whereupon Louisiana moved the Court to recall its order.[5] And only then—expressly upon Louisiana's motion—was that order recalled and vacated.[6]

> Q   A   I believe so.
> Q   What did you use that needle and syringe for?
> A   For the speed.
> Q   This stuff you sell right here?
> A   Yes.
> Q   Tell us how you use it?
> A   Tell you how I use it?
> Q   How do you use this needle and syringe in your speed that you sell?
> A   Demonstrate?
> Q   Yes sir. Tell us how you use it?
> A   Well, I put some water on the speed to dissolve it and just draw it up through the needle and inject it.
> Q   Inject it where?
> A   Into my arm, to my body.
> Q   Into a vein?
> A   Into a vein, yes sir.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q   How often do you do it?
> A   I just did it once with this kind of speed. That was it.
> Q   You sell other things though, don't you? Or didn't you?
> A   Yes. Yes sir, I do.
> Q   What other type of stuff did you sell?
> A   Just marijuana and barbiturates and small amounts of speed, like benies and hards and dexedrenes, that's about it.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q   You knew it was illegal when you sold this?
> A   Yes sir, I did.
> Q   And when you sold it in the past, you knew it was illegal?
> A   Yes sir, I did.
> Q   You knew using drugs was illegal?
> A   Yes sir, I did.

Transcript at 82–89, Louisiana v. Williford, No. 51,498, 26th Dist.Ct. (Bossier Parish), May 25, 1972.

3.  Counsel for the State asserted quite positively the District Court had "heard no testimony . . . heard no argument . . . [and had] not provide[d] the State or anyone an opportunity to argue this matter in his Court."

4.  IT IS THEREFORE ORDERED That an evidentiary hearing be conducted in this Court on August 23, 1973, at 9:30 A.M., before Honorable James M. Barton, United States Magistrate, to determine the veracity *vel non* of the allegations made by applicant in his petition, and upon conclusion of the hearing, the Magistrate is to make findings of fact and conclusions of law, and render his report and recommendations to this Court. The Clerk of this Court is to notify respondent, the Attorney General of Louisiana, and the State District Attorney of this hearing by sending each a copy of this order.

    Appendix 58.

5.  NOW INTO COURT, through undersigned counsel, comes the State of Louisiana and respectfully represents:

    1.

    This Honorable Court ordered an evidentiary hearing on the above Writ of Habeas Corpus to be held on August 23, 1973.

    2.

    The State of Louisiana shows that a full and complete evidentiary hearing was held in the 26th Judicial District Court on the exact same pleadings as were filed in this Honorable Court and that said Carey M. Horowitz was represented in that hearing by his retained attorney, J. B. Wells, and that all witnesses desired by applicant were called to testify.

    3.

    The State ask[s] that this court recall its order for an evidentiary hearing and review the transcript taken in the 26th Judicial District Court which is attached hereto.

    WHEREFORE, the State of Louisiana prays that this motion be granted.

    Appendix 59.

6.  RULING

    July 18, 1973, as a part of our Order herein, we held that an evidentiary hearing must be conducted by this Court and set the date of the hearing. However, since our Order was filed, the respondent, through Honorable Henry R. Brown, Jr., Assistant District Attorney, 26th Judicial District of Louisiana, filed in this Court on July 23, 1973, a pleading, together with the transcript of an evidentiary hearing consisting of 148 pages which was held by the State trial Court on February 26th and 27th, 1973, at Benton, Louisiana. Therefore, that part of our Order directing that an evidentiary hearing be held by this Court is recalled and vacated.

    Appendix 62.

Horowitz' former attorney testified in the state habeas proceeding that no information came before the sentencing Judge during the Williford trial that would not have been available in any event. Louisiana does not expressly adopt that proposition, but does so implicitly. The factors a Louisiana sentencing Judge may take into account are largely undefined by express statutory or judicial pronouncement.[7] The Judge may call for a pre-sentence report,[8] but there is nothing in the record to show (i) what Horowitz' pre-sentence report showed, or (ii) what it would not have shown but for his testimony on behalf of Williford.[9]

■ But whether or not the attorney correctly stated the law does not resolve this case. For the State has neither shown it would have presented the damaging information to the sentencing judge, nor that it knew of its existence. The long and short of it is the attorney represented two criminal defendants with differing defense postures. While we need not hold such representation is constitutionally forbidden, we certainly hold, as we have before, Porter v. United States, 5 Cir., 1962, 298 F.2d 461, full disclosure is required—not only of the dual representation, but of all the likely consequences flowing from the differing defenses.

■ In this case the quantity and quality of information the attorney gave Horowitz is disputed. But the State has not contended Horowitz had any idea what he would be compelled to reveal during Williford's trial. Under the circumstances, the attorney was "hobbled or fettered or restrained" from pursuing "as a vigorous advocate" Horowitz' "single aim" of incurring the least possible penalty for his first recorded offense against society. Porter v. United States, *supra* at 463.

We do not hold the failure fully to advise Horowitz violates the Constitution *per se*, because we do not preclude the possibility a state—in some future case—could show an attorney's conduct was reasonably effective notwithstanding a similar failure-to-advise. We *do* hold such an inquiry would be irrelevant in this case, however, because Horowitz' counsel represented conflicting interests, and that unfairly stacked the deck against full advice *before* the plea was entered—even *if* reasonably effective counsel would have neglected to do so.

Finally, our holding, at least for now, is not intended to go beyond its facts—in particular the fact Horowitz' counsel was appointed, *see* Fitzgerald v. Estelle, 5 Cir., 1974, 505 F.2d 1334 (en banc), and the whole business was known to the

---

**7.** *But see*, State v. Pierson, 1974, La., 296 So.2d 324.

**8.** Art. 875. Pre-sentence Investigation

If a defendant is convicted of an offense other than a capital offense, the court may order the division of probation and parole of the department of corrections to make a presentence investigation. All such reports shall be made within sixty days of conviction except that when the defendant is released on bond pending imposition of sentence, such reports shall be made within ninety days of the conviction. In making the investigation, the probation officer shall inquire into the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, his family situation and background, economic and employment status, education, personal habits, and other matters deemed relevant by the officer, or ordered investigated by the court. The court may postpone imposition of sentence until the report is received.

Local and state law enforcement agencies and mental and correctional institutions shall furnish to the probation officer criminal records and such other information and data as the probation officer requests. The court may order a physical and mental examination of the defendant.

If the defendant is sentenced to imprisonment, a copy of the report shall be transmitted by the division of probation and parole supervision to the institution to which he is committed.

LSA–C.Cr.P. art. 875.

**9.** We do not suppose Horowitz could have been compelled to divulge his criminal history during the sentencing procedure. *Cf.* U.S. Const. Amend. V. The facts (i) Horowitz had no record of criminal convictions and (ii) only Williford's help enabled the agents to contact Horowitz, support the inference implicit in the Judge's granting the writ that the State was, in fact, otherwise unaware of his earlier activities.

State through the prosecutor and the trial judge since each could see the dual representation, knew of the plea of guilty with the prospect that Horowitz would remove the finger from Williford and in the course of doing so bare his life for all to see.

Affirmed.