UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Everett HUNTLEY and Gipson F.
Hemphill, Defendants-Appellants.

No. 75–1871.

United States Court of Appeals,
Fifth Circuit.

July 29, 1976.

Rehearing and Rehearing En Banc
Denied Oct. 4, 1976.

Richard L. Rosenfield, Alan J. Weil, Los Angeles, Cal., for defendants-appellants.

Frank D. McCown, U. S. Atty., Michael P. Carnes, Asst. U. S. Atty., Fort Worth, Tex., Judith A. Shepherd, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before TUTTLE, GODBOLD and GEE, Circuit Judges.

GEE, Circuit Judge:

Appellants were convicted on seven counts of interstate transportation of forged or falsely made securities, nine counts of interstate transportation of securities of the value of $5,000 or more knowing the same to have been stolen, converted or taken by fraud, one count of making false material statements to a federally insured bank for the purpose of influencing the bank to approve a loan, and one count of conspiracy to commit these substantive offenses. The unusual feature of their trial was that individuals who allegedly excelled in the clever but illegal use of documents were convicted in a proceeding conducted almost entirely by document. Finding no reversible error in this combination of poetic and legal justice, we affirm.

## I. *The Facts: A Brief Documentary*

Robert Huntley and Gipson Hemphill were partners in the R. E. Huntley Cotton Company (the Huntley company), which both bought and sold cotton for its own account as a broker and operated warehouses. In the summer of 1970, they opened an account in the name of the Altus Cotton Company at the First National Bank, Altus, Oklahoma. The authorized signatures for this account were R. E. Huntley and S. B. Marlin. Also in the summer of 1970, appellants stopped cancelling their warehouse receipts when the cotton represented by the receipts was shipped out of the warehouses. Rather than being destroyed, the receipts were collected in the Huntley company office in Vernon, Texas. Soon a torrent of documents circulated between the Huntley company account in the First State Bank, Vernon, Texas (the Vernon bank), the Altus Company account in Altus, and three other accounts in Quanah, Texas, Frederick, Oklahoma, and Greenwood, Mississippi. Between January 1971, and the discovery of the scheme in July 1973, over $500,000,000 of deposits were made in these accounts, and over 80% of these deposits were solely attributable to transactions between the five participating accounts. Many of the deposits were made by sight drafts drawn on one of the participating depositors with the worthless warehouse receipts from the Huntley company office in Vernon attached. These drafts were frequently paid by the deposit of other drafts, drawn on another of the depositors and accompanied by more Huntley company cotton warehouse receipts. Part of the flow of documents consisted of checks drawn on the Altus Cotton Company and signed with the name "S. B. Marlin." Both appellants helped prepare drafts with the worthless warehouse receipts attached and signed "S. B. Marlin" on checks.

After this scheme was exposed and appellants indicted on the 18 counts on which they were convicted, a jury trial commenced. One witness, a bank examiner for the State of Texas, testified to the manner in which he conducted the investigation of

the Vernon bank which led to its closing. At this juncture, the appellants waived their right to a jury trial. The district court examined each of them on the record to verify their understanding of this waiver and their agreement to their counsel's proposal to submit the case on stipulated testimony. The trial was briefly reconvened twice thereafter, with appellants present, to monitor progress on the stipulations. At the conclusion of the second of these sessions, both sides rested, having submitted all the remaining evidence through stipulations signed by both appellants, their counsel, and the prosecutor. The court reached its decision in chambers, and appellants did not reappear in open court until their sentencing. On appeal, appellants challenge the sufficiency of the evidence, the procedure of the district court, and the adequacy of their trial counsel's representation.

## II. *The Sufficiency of the Evidence: Forged Documents*

Appellants challenge the sufficiency of the evidence supporting each of the 18 counts on which they were convicted. We have reviewed the evidence supporting the convictions on Counts 7, 11, 14, and 16, and finding it sufficient, we affirm those convictions. Since the ten-year sentences on those four counts were concurrent with each other and with the sentences received on the remaining fourteen counts, and envisioning no additional collateral consequences from the convictions on the other counts, we decline to review the remaining counts.[1]

Counts 7, 11, 14, and 16 involve the offense of causing the interstate transportation of forged or falsely made securities in violation of 18 U.S.C. § 2314 (1970). In each of these counts, the forged or falsely made security in question is a check drawn on the Altus Cotton Company account and signed on behalf of the company by "S. B. Marlin." Each of these checks was deposited in the Huntley company account in the Vernon bank. The Huntley company re-

ceived immediate credit, and this credit was promptly used to pay Huntley company checks which were being held by the Vernon bank.

The convictions on these four counts are proper if the government proved either that these checks were "forged" or that they were "falsely made." *E. g., United States v. Anderson,* 527 F.2d 442 (5th Cir. 1976). Although this circuit has previously remarked that the two statutory terms have different meanings, it has never indicated the outer limits of the term "falsely made." *Stinson v. United States,* 316 F.2d 554 (5th Cir. 1963), the seminal case recognizing that "forged" and "falsely made" have different meanings, merely shows that it is not necessary to prove the technical elements of a forgery to sustain a conviction on an indictment which alleges transportation of a falsely made security. We approach the question of whether the "S. B. Marlin" checks were within the scope of the third paragraph of 18 U.S.C. § 2314 without clear guidelines from binding precedent.

We think it apparent that the purpose of the term "falsely made" was to broaden the statute beyond rigorous concepts of forgery and to prohibit the fraudulent introduction into commerce of falsely made documents regardless of the precise method by which the introducer or his confederates effected their lack of authenticity. *See United States v. Tucker,* 473 F.2d 1290, 1294 (6th Cir.), cert. denied, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402 (1973). Although this circuit has never faced a case precisely like this one—involving use of a check in a spurious name which was the duly authorized signature for an actually existing bank account—the issue has arisen in three other circuits. Each has held that § 2314 condemns such checks. *See United States v. Seay,* 386 F.Supp. 550 (E.D.Ill. 1974), *aff'd,* 518 F.2d 646 (7th Cir.) (per curiam), *cert. denied,* 423 U.S. 995, 96 S.Ct. 421, 46 L.Ed.2d 368, 44 U.S.L.W. 3330 (1975) (check written by fictitious drawer on company account); *United States v.*

---

1. We thus pretermit consideration of appellants' claim of a fatal variance between the indictment and the proof on Count 18, and the sufficiency attack on all the other counts.

*Scott*, 457 F.2d 848 (10th Cir.), *cert. denied*, 409 U.S. 866, 93 S.Ct. 160, 34 L.Ed.2d 114 (1972) (check on company account drawn in fictitious name); *United States v. Metcalf*, 388 F.2d 440 (4th Cir. 1968) (check on individual account opened in fictitious name). These three circuits apparently employ a broad definition of forgery, so their conclusions that such checks are forged may be untenable in this circuit.[2] We nonetheless find them persuasive on the issue of whether the "S. B. Marlin" checks fall within the broader class of "falsely made" securities whose interstate transportation is forbidden by § 2314. The well-known decreased availability and use of blank check forms has made the establishment of a dummy bank account in a fictitious name an almost essential element of any substantial false document circulation scheme. We therefore conclude that § 2314 is violated by the kind of use of a spurious name with fraudulent intent which this record demonstrates.

There is no dispute that the name "S. B. Marlin" on the checks, whether or not totally fictitious, does not correspond to any actual person involved in these transactions. Moreover, there is no indication that either appellant made regular use of the "S. B. Marlin" name as an alias. The factual background previously discussed furnishes ample evidence, particularly when viewed in the light most favorable to the government as required by *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), that the appellants' intent was fraudulent when they opened the Altus

Cotton Company account, when they signed the spurious name on the checks, and when they caused the checks to be transported in interstate commerce.[3] While particular proof of reliance on the signature is not necessary to sustain a conviction on "falsely made" securities,[4] we note that the use of the "S. B. Marlin" signature was obviously material to the success of the fraudulent scheme because it contributed to the appearance that the checks were based on arms-length transactions with an independent business entity.

■ Finally, appellants argue that the evidence is insufficient because there is no showing that they were not authorized to use the name "S. B. Marlin." They rely on *Parker v. United States*, 297 F.2d 135 (5th Cir. 1961). That case, which dealt with signing the name of another, real person to checks, is completely inapposite. The absence of any "S. B. Marlin" from the scene of appellants' operations eliminates the need to prove lack of authorization as a separate element of the offense.

III. *Rendition of Judgment from the Documentary Evidence: Defendants' Absence*

■ The district judge did not reconvene court to render his decision in the presence of the appellants, and the government concedes that they may have first gained actual knowledge of the decision through the media. The appellants contend that this situation represents a violation of Fed.R. Crim.P. 43(a)[5] and constitutes reversible er-

2. *Hubsch v. United States*, 256 F.2d 820 (5th Cir. 1958), apparently adopts a somewhat narrow definition of forgery. But it discusses only the concept of forgery, and since we do not consider whether the "S. B. Marlin" checks were forged, *Hubsch* is irrelevant here. While the *Hubsch* court could have considered the issue of whether the convictions in the case were proper on the "falsely made" theory, it did not.

3. We therefore pretermit consideration of precisely which combination of these times is critical to sustain a conviction. *Compare United States v. Metcalf*, 388 F.2d 440, 443 (4th Cir. 1968) (stressing the intent at the time the bank account was opened) *with United States v.*

*Seay*, 386 F.Supp. 550, 554 (E.D.Ill.1974), *aff'd*, 518 F.2d 646 (7th Cir.) (per curiam), *cert. denied*, 423 U.S. 995, 96 S.Ct. 421, 46 L.Ed.2d 368, 44 U.S.L.W. 3330 (1975) (emphasizing the latter times).

4. *See Stinson v. United States*, 316 F.2d 554 (5th Cir. 1963).

5. This rule provides:
   The defendant shall be present at the arraignment, at the time of the plea, *at every stage of the trial including* the empaneling of the jury and *the return of the verdict*, and at the imposition of sentence, except as otherwise provided by this rule. (emphasis added)

ror. We agree that error occurred, but we hold that it was harmless.

At the outset, we reject the extreme positions assumed by each side. The government's suggestion that the rendition of the decision in a bench trial is not a "stage of the trial" within the meaning of Rule 43(a) is untenable. The appellants were therefore entitled to be present in person, and their absence violated the rule.

Appellants, on the other hand, recognize that Rule 43 must be considered together with Fed.R.Crim.P. 52(a), which provides that harmless error is to be disregarded. *E. g., United States v. Gradsky*, 434 F.2d 880 (5th Cir. 1970), *cert. denied*, 401 U.S. 925, 91 S.Ct. 884, 27 L.Ed.2d 828 (1971). However, they suggest that the right to be present at the rendition of the decision is one of those constitutional rights so basic to a fair trial that its denial can never be treated as harmless error. *See Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 710 (1967). We assume without deciding that this violation of Rule 43 also represents a violation of appellants' constitutional rights.[6] But we decline to expand the list of rights denial of which may not be treated as harmless error.

Consonant with our assumption that the appellants' absence represents a denial of constitutional rights, we apply the definition of constitutional harmless error from *Chapman*. We find beyond a reasonable doubt that their absence from the rendition of the decision did not contribute to the court's decision or otherwise affect their substantial rights.[7] Our finding depends on the facts that this was a bench rather than a jury trial and that all the evidence, with the exception of the testimony of one introductory witness, was documentary. We are sensitive to appellants' argument that the presence of defendant at the rendition of the decision enhances the solemnity of the ultimate confrontation between the accused and the finder of fact. This occasion vindicates the judicial system's symbolic interest in maintaining the appearance of justice and its pragmatic interest in giving the finder of fact a final opportunity to change its decision. We find appellants' absence to be harmless beyond a reasonable doubt, but we stress that district courts should take all reasonable steps to obtain the presence of every defendant at the time a decision is rendered.

## IV. *Judicial Exposure to Improper Documents: Co-defendants' Presentence Reports*

Appellants were indicted along with three co-defendants who pled guilty. Following the submission of appellants' case to the district judge, but a month before he reached a decision as to their guilt, he sentenced the co-defendants. During that sentencing hearing, he was exposed to testimony which indicated that these co-defendants became involved in the scheme because they had unusual trust and respect for Huntley and that the one co-defendant who was not an employee of the Huntley company was less involved in the company's business than Hemphill. This testimony was obviously not prejudicial to the appellants. There were also several remarks about the "money tree" operated by Huntley which, while unfortunate, are obviously merely colorful restatements of the allegations in the in-

---

**6.** The scope of a defendant's constitutional right to be present at trial is determined, not by Rule 43, but by whether his presence bears a reasonably substantial relationship to the opportunity to defend. *See United States v. Gradsky*, 434 F.2d 880, 883–84 (5th Cir. 1970), *cert. denied*, 401 U.S. 925, 91 S.Ct. 884, 27 L.Ed.2d 828 (1971), and cases cited therein.

**7.** The constitutional harmless error standard was applied to a Rule 43 violation in *United States v. Gradsky, id.* We recognize that *Estes v. United States*, 335 F.2d 609, 618 (5th Cir. 1964), employed the slightly different verbaliza-

tion that a conviction cannot stand when there is "any reasonable possibility of prejudice from the defendant's absence." To the doubtful extent that these verbalizations may represent substantive differences, our use of the standard in *Gradsky* is explicitly dependent on our assumption of a constitutional violation. There is no indication that a constitutional argument was raised in *Estes*, and we do not believe that anything in *Gradksy* or in our opinion here conflicts in any way with the *Estes* standard for reviewing a claim based merely on Rule 43.

dictment. The judge was also exposed to factual reports prepared for sentencing the co-defendants and to a letter written on behalf of one of the co-defendants by a state law enforcement official. The reports contained the "official version" of the offense, including references to the appellants, and the letter referred to the fact that unspecified state charges arising from the same transactions were pending against them.

■ In keeping with the procedure followed in *United States v. Ramirez*, 513 F.2d 72 (5th Cir.), *cert. denied*, 423 U.S. 912, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975), we have reviewed the transcript of the co-defendants' sentencing hearing, their presentence reports, and the letter. We strongly adhere to our observation in *Ramirez* that a judge should not read material containing references to a given co-defendant prior to the adjudication of that defendant's guilt. *Id.* at 77–78. *Ramirez* places a duty on both the judge and those preparing presentence reports on co-defendants to avoid such contact.

■ However, we find, as we did in *Ramirez*, that any error was harmless. We base our conclusion on the minimal prejudice in the improper references to these appellants. None of the material which the judge considered in sentencing the co-defendants amplified the appellants' roles in the alleged scheme beyond that abundantly demonstrated by the evidence against them. The sentencing material referred neither to prior crimes committed by the appellants nor to their personal histories. As with the appellants' absence from the rendition of the decision, we disapprove of the district court's procedure but find on the peculiar facts of this case that any error was harmless beyond a reasonable doubt.

## V.  *Effective Assistance of Counsel: Looking Behind the Documents*

Appellants claim that their joint representation by a single, privately retained tri-

al counsel deprived them of their constitutional right to effective assistance of counsel. Having employed new and separate counsel on appeal, they urge that their trial counsel's performance was inadequate and that he labored under a conflict of interest in that the joint representation prevented him from fully pursuing the possible defenses available to each of them only at the expense of the other.

In challenging their trial counsel's actual performance, both appellants attack his decision to rely entirely on stipulated testimony and his execution of the stipulations. They object to the inclusion of allegedly inadmissible or inaccurate material in the stipulations and to the occasional use of prejudicial colloquialisms to describe their operations. We agree with appellants that the prosecutor's participation in developing the stipulations demonstrates prosecutorial awareness of the alleged incompetency so that, notwithstanding the retained status of counsel, this aspect of their trial representation should be evaluated under this circuit's formulation of the standard of the sixth amendment. *Cf. Fitzgerald v. Estelle*, 505 F.2d 1334, 1336–37 (5th Cir. 1974) (en banc). This standard requires "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir.), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1960) (emphasis in original). Based on the record before us, appellants' representation at trial complied with these standards. We decline appellants' invitation to invoke the exceptional remedy of a remand from this direct appeal for an evidentiary hearing; the isolated examples of careless or inappropriate language to which they point do not raise a serious question on this issue. The effort to expand the record to go behind the face of the documents to explore trial counsel's representation is appropriate, if at all, only through a proceeding under 28 U.S.C. § 2255 (1970).[8]

---

8.  In considering this aspect of appellants' ineffective assistance claim, we have not con-

sidered the affidavits from their appellate counsel and their counsel in other proceedings. Nor

At the threshold of the joint representation prong of their ineffective assistance argument, appellants ask us to hold that the trial court has a duty to warn co-defendants with joint representation of the possibility of a conflict of interest and of their right to separate counsel. The rule in this circuit is that such advice is unnecessary where there is neither objection, claim, nor notice to the court of any alleged conflict. *E. g., United States v. Boudreaux,* 502 F.2d 557 (5th Cir. 1974).[9] Contrary to appellants' claim, this rule has been consistently applied in this circuit, and we must follow it.

Appellants acknowledge that joint representation does not inherently deprive a defendant of the effective assistance of counsel. *E. g., Foxworth v. Wainwright,* 516 F.2d 1072, 1076 (5th Cir. 1975). By the same token, the government recognizes that the sixth amendment is violated when an attorney is appointed to represent conflicting interests simultaneously. *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942). An "actual, significant" conflict, as opposed to one which is "irrelevant or merely hypothetical," is required to establish a violation with joint appointed counsel. *Foxworth v. Wainwright,* 516 F.2d at 1077 n. 7. We assume for purposes of discussion, without deciding, that the same test applies where defendants voluntarily elect joint representation by retained counsel.[10]

When the alleged conflict is that joint representation of co-defendants restricted counsel in selecting trial defenses and strategies, the requisite "actual, significant" conflict of interest is present "whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." *Id.* at 1076.

Appellants allege that a conflict of interest requiring reversal existed because joint representation deprived their trial counsel of the opportunity to exploit possible differences in the degree of their criminal intent. However, they point to no specific evidence which was or might have been introduced to show lack of criminal intent on the part of either of them. Although they correctly note that the record indicates that Huntley was more widely known in the cotton business, there is no record evidence supporting Hemphill's assertion that separate trial counsel could have made a plausible defense that he was relying in good faith on Huntley's instructions. And contrary to Hemphill's claim, the record at several points demonstrates his active participation in the general scheme and particularly in the use of the "S. B. Marlin" name. The fact that one co-defendant is in a policy-making position and the other in a ministerial position does not necessarily constitute any conflict in

---

have we taken judicial notice of or otherwise considered the Receiver's Report in the bankruptcy proceeding involving the Huntley company. We mention these three items only to clarify the scope of our review in the event that any of the material contained in these documents is made a proper part of the record in a subsequent § 2255 proceeding.

**9.** Although this rule is phrased in terms of notice to the court of an alleged conflict of interest, we note that no government agency, including the prosecutor, had notice of any conflict of interest in this case. The prosecutor's familiarity with the contents of the stipulations, *see* page 10 *supra,* is completely unrelated to the asserted conflict of interest between the two defendants.

**10.** We thus pretermit any consideration of whether some additional showing is required to establish a constitutional violation when an actual conflict exists in joint representation by retained counsel. *Compare Foxworth v. Wainwright,* 516 F.2d 1072, 1076 n. 5 (5th Cir. 1975), *with Alvarez v. Wainwright,* 522 F.2d 100, 105 n. 14 (5th Cir. 1975). Regardless of the current status of its teachings on this particular issue, *Porter v. United States,* 298 F.2d 461 (5th Cir. 1962), is inapposite to our case because it involves the undeniable conflict created when defense counsel has a unrelated but simultaneous attorney-client relationship with a principal prosecution witness.

their joint representation. *See United States v. Wayman,* 510 F.2d 1020, 1026 (5th Cir.), *cert. denied,* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). Since the foreclosure of an alternate strategy or defense does not constitute the requisite "actual, significant" conflict of interest unless the defense is at least plausible, *Foxworth v. Wainwright,* 516 F.2d at 1080, we reject appellants' claim of ineffective assistance of counsel. The record does not show such a conflict.

In the absence of any concrete facts suggesting that there was an "actual, significant" conflict of interest, we also reject appellants' alternative request for a remand for an evidentiary hearing to develop the facts further.[11] As with the first prong of their ineffective assistance argument, such

factual development, when necessary, can best be done in post-conviction proceedings.

## VI. *Conclusion*

In summary, the record does not support appellants' claims that they were deprived of the effective assistance of counsel, and we decline to remand for an evidentiary hearing to amplify the relevant facts. The district court erred in rendering a decision in the absence of the appellants and in sentencing co-defendants in such a way that it was exposed to material referring to the appellants prior to the adjudication of their guilt, but these errors were harmless beyond a reasonable doubt. The evidence being sufficient to support the convictions on four counts of interstate transportation of falsely made securities, these convictions are

AFFIRMED.

---

**11.** We recognize that appellants' suggestion of a remand to develop whether their counsel fulfilled his duty to disclose the consequences of differing defense postures may involve a somewhat distinct issue from the issue of whether there was actual, impermissible representation of conflicting interests. *See Horowitz v. Henderson,* 514 F.2d 740 (5th Cir. 1975). But the absence of a demonstrable "actual, significant" conflict renders it unnecessary to explore the record's silence about counsel's disclosure. We note that our disposition makes it unnecessary to consider what represents a waiver of the right to effective assistance of counsel in the context of joint representation by retained counsel.