**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles A. MITCHELL,
Defendant-Appellant.**

**No. 78–5189.**

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1979.
Rehearing Denied Feb. 28, 1979.

J. Robertshaw, Greenville, Miss., for defendant-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Thomas W. Dawson, Asst. U. S. Attys., Oxford, Miss., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

MORGAN, Circuit Judge.

This is an appeal by the defendant-appellant, Charles A. Mitchell, from his conviction by a jury in the United States District Court for the Northern District of Mississippi for the interstate transportation of falsely made securities in violation of 18 U.S.C. §§ 2, 2314.[1] We affirm that conviction.

1. 18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Mitchell, president of Columbus Savings and Loan Association (hereinafter Association), had developed a "cash flow or cash shortage" problem as a result of unsound loans. In an effort to keep the board of directors in the dark as to the situation, Mitchell, along with Boyd Hobbs,[2] a developer of commercial property, concocted a sophisticated "kiting scheme" to put additional funds into the Association and to enable Hobbs to obtain extra loans. The transactions involved were rather complicated. Prior to his purchase of a certificate of deposit (hereinafter CD), Hobbs would make arrangements with the pledgee bank for a loan to be secured by the CD to be purchased. Mitchell would then backdate the CD and give it to Hobbs to use as security for the previously agreed upon bank loan. At the same time Hobbs would give Mitchell a check for the full amount of the CD being purchased, with the understanding that Mitchell would hold the check and not negotiate it until Hobbs gave him the okay. Simultaneously with the issuance of the CD, Hobbs would execute an assignment of the CD to the pledgee bank, which Mitchell acting on behalf of the Association would acknowledge and agree to honor. Hobbs would then transport the CD in interstate commerce to the pledgee bank which would take the CD as security for the loan to Hobbs. Hobbs would then deposit the loan proceeds in his bank account to cover or "make good" the check he had asked Mitchell to hold. Hobbs would then notify Mitchell to let the check go through. Under this scheme, from 1971 to 1973, Mitchell issued to Hobbs nearly four million dollars worth of backdated CD's.

Proof of a violation of paragraph 3 of Section 2314 of Title 18 of the United States Code requires the establishment of the following elements: (1) unlawful or fraudulent intent in the (2) transportation in interstate commerce of (3) any falsely made securities with (4) knowledge that the securities were falsely made. Mindful that the evidence must be viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1941), we shall proceed with our review.

Attacking the existence of the first requisite element, Mitchell argues that there was no evidence whatsoever of fraudulent intent. We cannot agree. The record furnishes ample evidence of fraudulent intent. The record shows that when Hobbs first attempted to pledge accurately dated CD's a day or two after they were issued, the pledgee banks became suspicious. Thereafter, Mitchell started backdating the CD's to "make them more acceptable to the banks."[3] While particular proof of reliance on the "falsely made" aspect of the security is not necessary to sustain a conviction,[4] it is obvious that here the fictitious date was a material part of an intentional scheme to defraud. The first element of the offense is therefore satisfied.

The second element of the offense requires transportation in interstate commerce. Because the interstate element is only included to provide a constitutional basis for the exercise of federal jurisdiction, it is not necessary to show actual knowledge by Mitchell of the interstate transportation of the security. All that need be shown is the fact of the interstate transpor-

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
18 U.S.C. § 2314 provides in pertinent part: (paragraph 3) Whoever, with unlawful or fraudulent intent, transports in interstate commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited

shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. The case against Hobbs was transferred to Alabama where he pled guilty.

3. TR. 901, 902.

4. See *United States v. Huntley*, 535 F.2d 1400, 1403 (5th Cir. 1976); *Stinson v. United States*, 316 F.2d 554, 555 (5th Cir. 1963).

tation.[5] That fact was clearly shown in the record and therefore the second element of the offense is satisfied.

■ Assaulting the existence of the third element of the offense, Mitchell contends that there were no "falsely made" securities. In support of this contention Mitchell asserts that this court, in defining "falsely made," has followed the rationale of *Marteney v. United States*, 216 F.2d 760 (10th Cir. 1954). In *Marteney* the Tenth Circuit declared that the "falsely made" provision of Section 2314 referred to the genuineness of execution and not to the representation of facts. However, this court, in *United States v. Huntley*, 535 F.2d 1400, 1402 (5th Cir. 1976), *reh. en banc den.*, 540 F.2d 1086, *cert. den.* 430 U.S. 929, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977), said:

> We think it apparent that the purpose of the term "falsely made" was to broaden the statute beyond rigorous concepts of forgery and to prohibit the fraudulent introduction into commerce of falsely made documents *regardless of the precise method* by which the introducer or his confederates effected their lack of authenticity. (emphasis added).

Consequently our determination of "falsely made" is not limited to the genuineness of the execution of a document. Moreover, this court has stated "[t]he making of a draft with the *knowledge* that there is no obligation . . . would tend to falsify the nature of the instrument . . . ." (emphasis added). *United States v. Hagerty*, 561 F.2d 1197, 1199 (5th Cir. 1977). Reasoning thusly, when we go beyond the execution of the CD's and review the underlying facts we find fully enough evidence to uphold a finding by the jury that the security was "falsely made." The evidence clearly showed that Mitchell knew that Hobbs' check would bounce if immediately negotiated and hence he knew that there was no obligation on the part of the Association to honor the CD at the time it was issued.

Therefore it is our conclusion that these securities were "falsely made" so as to satisfy the third element of the offense.

■ The fourth element of the offense, involving knowledge that the securities were "falsely made," is, of course, satisfied due to the fact that Mitchell himself was the operative in the "falsely making" of the CD's.

■ Concluding that all of the statutory elements of the offense are present, we next address Mitchell's argument that the jury, by returning not guilty verdicts on two of the five counts brought against him, eliminated from consideration all evidence relating to those two counts, especially where it was used in support of the three counts on which he was convicted. The rule in this circuit, however, is that where the evidence supporting a particular count is found sufficient, what the jury did on the remaining counts is immaterial to the appellate inquiry. *United States v. McLaurn*, 580 F.2d 811 (5th Cir. 1978). Here the evidence was sufficient to support the three counts on which Mitchell was convicted and they therefore are affirmed.

■ Finally, Mitchell argues that the trial court abused its discretion in sentencing him to institutional confinement. This court, however, has consistently held that: "[a] sentencing court exercises broad discretion which is not subject to appellate review 'except when arbitrary or capricious action amounting to a gross abuse of discretion is involved.'" *United States v. Gamboa*, 543 F.2d 545, 546 (5th Cir. 1978). The two-year jail term was well below the maximum sentence Mitchell could have received. Mitchell entirely fails to show any such gross or outrageous abuse of sentencing discretion as would warrant a modification or vacation of the sentence by this court.

AFFIRMED.

---

**5.** See *United States v. Feola*, 420 U.S. 671, 694, 95 S.Ct. 1255, 1269, 43 L.Ed.2d 541, where the Court said concerning a conspiracy: "[i]mposition of a requirement of knowledge of those facts that serve only to establish federal jurisdiction would render it more difficult to serve the policy behind the law . . . without serving any other apparent social policy."