**Ex parte Pablo Urias ALANIZ.**

No. 57859.

Court of Criminal Appeals of Texas,
Panel No. 1.

March 28, 1979.

Rehearing En Banc Denied July 11, 1979.

Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, W. C. DAVIS and PHILLIPS, JJ.

OPINION

PHILLIPS, Judge.

This is a post-conviction application for a writ of habeas corpus. Article 11.07, V.A.C.

C.P. Petitioner was originally convicted for the unlawful possession of marihuana on a plea of not guilty to a jury. Article 725b, V.A.P.C. (1925). The jury assessed petitioner's punishment at 25 years' imprisonment.

On April 21, 1976, petitioner filed an original application for writ of habeas corpus in the 143rd Judicial District Court of Ward County. After conducting an evidentiary hearing, the district judge[1] found that the same attorney represented the petitioner and his co-defendant; that an exculpatory letter as to petitioner was written by his co-defendant, delivered to the district attorney and subsequently disclosed to petitioner's trial attorney at a pretrial conference held one week before trial; and that the trial attorney did not call or subpoena the petitioner's co-defendant and author of the letter. The district judge concluded that, as a matter of law, the trial attorney had a conflict of interest through his dual representation so as to deny petitioner his right to due process of law.

By per curiam order of July 13, 1977, this Court remanded this cause to the district court for another evidentiary hearing to develop the "conflict of interest" issue. A hearing was conducted on November 29, 1977. The petitioner's co-defendant and author of the exculpatory letter was subpoenaed but failed to appear since he was outside this State and had no funds to make the trip. He is still under indictment for the same offense of marihuana possession. As a result, only petitioner and his original trial attorney testified at the second evidentiary hearing.

The district judge[2] found again that the co-defendant was not called or subpoenaed for petitioner's trial and, in addition, that the omission of trial counsel was a result of his dual representation. He further found that the testimony of petitioner's co-defendant, if elicited, would have created a reasonable doubt as to petitioner's guilt; that petitioner's trial attorney did not discuss the concept of a conflict of interest with petitioner; and that petitioner's co-defendant's signature is on the exculpatory letter. The district judge concluded, as a matter of law, that there was a conflict of interest on petitioner's trial attorney's part which denied petitioner his right to due process of law. Both district judges recommend the granting of habeas corpus relief.

Petitioner complains of a conflict of interest on the part of his retained attorney.[3] A conflict of interest resulting from one attorney's dual representation of defendants charged with the same offense does not mandate reversal of a conviction unless the conflict resulted in ineffective assistance of counsel. *Stutes v. State*, Tex. Cr.App., 530 S.W.2d 309; *Hargett v. State*, Tex.Cr.App., 534 S.W.2d 909; *Porter v. U. S.*, 298 F.2d 461 (5th Cir. 1962); *Foxworth v. Wainwright*, infra; *Horowitz v. Hender-*

---

1. The district judge conducting the original evidentiary hearing on this application was the same judge who presided at petitioner's original trial.

2. The district judge presiding at the second evidentiary hearing was administratively assigned to preside since the original prosecuting attorney was now the district judge.

3. An actual and significant conflict of interest exists when "one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." *Foxworth v. Wainwright*, 516 F.2d 1072 at 1076 (5th Cir. 1975); *U. S. v. Huntley*, 535 F.2d 1400 (5th Cir. 1976).
Further, ABA Standards Relating to The Defense Function, Sec. 3.5(b) provides:

"(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation. In some instances, as defined in the Code of Professional Responsibility, accepting or continuing employment by more than one defendant in the same criminal case will constitute unprofessional conduct." (Approved Draft, 1971)

*son*, 514 F.2d 740 (5th Cir. 1975); *U. S. v. Foster*, 469 F.2d 1 (1st Cir. 1972). The quality of assistance delivered by retained counsel is measured in terms of that counsel's adherence to any legal duties imposed upon him vis-a-vis his client. *Ex parte Raley*, Tex.Cr.App., 528 S.W.2d 257. The applicable legal duties of Texas attorneys who find themselves representing co-defendants are set forth in the State Bar of Texas' Code of Professional Responsibility.

"DR 5–105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

"(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." State Bar Rules, Appendix to V.A. C.S., Title 14, Art. 12, Sec. 8.

See *Pete v. State*, Tex.Cr.App., 533 S.W.2d 808.

At least at the time of the March 8, 1973, pretrial conference, trial counsel in this case was aware of a conflict. It was then that the exculpatory letter was provided for the trial counsel's review.[4] Trial counsel had no

4. The handwritten, exculpatory letter which appears in the record is set forth here verbatim.

"Dear Sir,

"This is a true statement concerning the Marihuana charges against myself and Mr. Pablo Urias Alaniz. Mr. Alaniz did not have any knowledge about the Marihuana and should be released Immediately. The following lines are to explain why.

"On Nov. 4, 1972, I was invited to a Pot 'Marihuana' party, by certain partys which names I will not mention, because it may endanger my life. While at the party, this guy I know was rolling paper lids and was measuring them with a tin lid, to make them the exact size, to be sold. This guy also had LSD tablets and gave each one of us one. I took mine and so did he. He finally got through, and I believe he went into a bad trip, because he told me to take him home. On the way to his house I started feeling the effects of the LSD. As it was my first time I can't remember much of what happened, because I was on a bad trip myself. All I remember is driving, driving and driving and finally I was here in Monahons. And Mr. Alaniz was waving and hollering and was walking across the street from the Road Runner and was carring a paper bag in his hand and now that I am sober and can remember things better, he had a beer in the paper bag. I remember quiet well, because I asked him

for one, and he didn't have anymore. So he asked me to take him to the Miaget Bar, to look for a friend, because his car had broke down and he needed some tools to fix it. And thats' when I ran the red light in town and was stopped by a City Policeman who confiscated the Marihuana from under the passengers seat. As soon as I saw the paper bag, I thought Mr. Alaniz had put it there, because I had seen him with a paper bag, but I also forgot that I had seen him throw it out. So I told the City Policemen that I had picked Mr. Alaniz here in Monahans carring a paper bag and that I did not know what was in it. So now I am trying to clear him and trying to clear my mind as to what really happened. It could have been forgotten there by the guy whom I took home, or he could have given it to me, and then I could have stolen it from him, but then I know damn well he had more than that, anyway thats' what L.S.D. did to me and in a way I am glad I was caught, because I could have killed someone, because all the lights looked the same to me.

"So when you take our case before the Grand Jury I hope you take this statement into consideration and have my bond lowered, so I can make it, and get myself, self commited, or court Commited to the state Mental Hospital in Big Spring, Tex. Because I need help and want to be helped before I get introduced to other drugs, or hard drugs,

recollection of discussing any possible conflict of interest with the petitioner and the petitioner denied having been apprised of any possible conflict of interest or "possible effect[s] of such [dual] representation."[5] It is arguable that the conflict of interest from trial counsel's dual representation resulted in his failure to introduce the exculpatory letter into evidence or to place his other fee-paying client on the stand to testify on behalf of petitioner. Cf. *Hargett v. State*, supra. It is apparent that petitioner was prejudiced by his trial counsel's failure to even attempt the introduction of the exculpatory letter. We are foreclosed from analyzing the degree of prejudice resulting from the conflict of interest for the purposes of determining whether reversible error is shown:

> "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calcula-

tions as to the amount of prejudice arising from its denial." *Glasser v. U. S.*, 315 U.S. 60 at 76, 62 S.Ct. 457 at 467, 86 L.Ed. 680 (1942).

In *Porter v. U. S.*, supra, at 463, it was stated:

> "[Effective] representation is lacking, however, if counsel, unknown to the accused and *without his knowledgeable assent*, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others." (Emphasis added)

The Fifth Circuit also embraces the intent of DR 5–105(C) in their holding that "full disclosure is required—not only of the dual representation, but of all the likely consequences flowing from the differing defenses." *Horowitz v. Henderson*, supra, at 743.[6]

and have to spent the rest of my life behind bars.

"So any consideration on my behalf will be kindly and gratefully Appreciated.

"Yours very truly,
"Mr. Margarito Pina"

5. ABA Standards Relating to The Defense Function, Sec. 3.5, provides:

"(a) At the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of a lawyer to represent him.

"(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation. In some instances, as defined in the Code of Professional Responsibility, accepting or continuing employment by more than one defendant in the same criminal case will constitute unprofessional conduct.

"(c) In accepting payment of fees by one person for the defense of another, a lawyer

should be careful to determine that he will not be confronted with a conflict of loyalty since his entire loyalty is due the accused. [When the fee is paid or guaranteed by a person other than the accused, there should be an explicit understanding that the lawyer's entire loyalty is to the accused who is his client and that the person who pays his fee has no control of the case.] It is unprofessional conduct for the lawyer to accept such compensation except with the consent of the accused after full disclosure. It is unprofessional conduct for a lawyer to permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.

"(d) It is unprofessional conduct for a lawyer to defend a criminal case in which the lawyer's partner or other professional associate is *or has been* the prosecutor [or has participated in or supervised the prosecution at any stage.]"

6. The federal courts analyze the question of ineffective assistance of counsel resulting from a conflict of interest in a manner differing from the analysis invoked by this Court. Reversible error results from an attorney's less than reasonably effective assistance (as distinguished from that degree of incompetency which results in a fundamentally unfair trial) only if the petitioner shows "some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a

There can be no strategic or tactical benefit in withholding exculpatory evidence from a jury which is deciding whether the attorney's client is guilty or innocent.

Beyond the issue of whether petitioner's counsel violated legal duties he owed petitioner in failing to disclose the likely consequences of his dual representation, the State Bar Rules set forth other obligations which petitioner's trial counsel arguably neglected in his representation of petitioner. DR 7–101(A)(1) provides in pertinent part:

"A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B)."

DR 7–101(A)(3) provides as follows:

"A lawyer shall not intentionally: (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

DR 7–101(B) provides:

"(B) In his representation of a client, a lawyer may:

"(1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.

"(2) Refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal."

Since it has been established that the petitioner was not apprised of the likely consequences of the conflict of interest arising from trial counsel's dual representation, it would not be possible for petitioner to knowingly waive the introduction of the exculpatory letter under the conditions expressed in the aforementioned cases and *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Neither is it arguable that the introduction of the exculpatory letter would be unlawful. Therefore, trial counsel's conduct in this case cannot be excused under the ambit of DR 7–101(B).

Further, the ABA's Standards Relating to The Defense Function, Secs. 1.1(b) and 1.6 provide as follows:

"1.1(b) The basic duty the lawyer for the accused owes to the administration of justice is to serve as the accused's counselor and advocate, with courage, devotion and to the utmost of his learning and ability, and according to law.

\*   \*   \*   \*   \*   \*

"1.6 Whether privately engaged, judicially appointed or serving as part of a legal aid system, the duties of a lawyer to his client are to represent his legitimate interests, and considerations of personal and professional advantage should not influence his advice or performance."

With respect to this addendum, the trial counsel's testimony at the evidentiary hearing is illuminating. When asked why the letter was not introduced at the trial of petitioner, his trial counsel responded, "How could it have been?" On cross-examination the following exchange occurred:

capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied." *Fitzgerald v. Estelle*, 505 F.2d 1334 at 1337 (5th Cir. 1974). This is the test applied to representation by retained counsel. The inquiry then focuses on whether the assistance provided by the retained attorney was adequate under the *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974), standard. That standard is also followed by this State in cases involving appointed attorneys, and that is whether the attorney was reasonably likely to and did render reasonably effective assistance. *Ex parte Gallegos*, Tex.

Cr.App., 511 S.W.2d 510; *Ex parte Bratchett*, Tex.Cr.App., 513 S.W.2d 851. Under this analysis, the federal courts would be forced to evaluate petitioner's counsel's assistance according to the *Herring v. Estelle* standard since the existence and contents of the exculpatory letter were known both to the trial judge and prosecutor as was the failure of petitioner's trial counsel to introduce this evidence on his client's behalf. See *U. S. v. Huntley*, supra. The record also reflects that the trial court and prosecutor were aware of trial counsel's dual representation status. The failure to introduce evidence favorable to one's client can only be viewed as less than reasonably effective assistance.

"Q All right. At any rate, do you recall Mr. Alaniz mentioning or suggesting that you should introduce the letter and you refused to try to introduce the letter, or anything of that nature?

"A Well, the only way you are going to produce the letter, it looks to me like, is to bring the Defendant."

It should be noted at this point that the admission of the letter into evidence does not necessarily require the physical presence and testimony of the author. The authenticity of the correspondence can be proven by circumstantial or other evidence. See generally: 2 Wharton's Criminal Evidence (11th Edition), Sec. 807, et seq., pp. 1391–1394; 23 Tex.Jur.2d, Evidence, Sec. 309, et seq.; and 29 Am.Jur.2d, Evidence, Sec. 879. Further, any objections to the letter as hearsay could be overcome by virtue of the declarations against penal interest expressed therein.

We must conclude, therefore, that petitioner's trial attorney labored under a conflict of interest which hindered his discharge of legal obligations owed to the petitioner and, as a consequence, petitioner was denied due process and course of law.

The relief sought is granted. The judgment of conviction is reversed and the cause is remanded.

DOUGLAS, Judge, dissenting.

The majority grants relief because counsel represented Alaniz and a co-indictee and that there was a conflict of interest. This was based on a letter written by the co-indictee to the district attorney. This letter recited that the marihuana belonged to the co-indictee. The majority overlooks the evidence that the co-indictee had previously made a statement that the marihuana was not his and that it belonged to the petitioner.

A second evidentiary hearing was held on November 29, 1977, at which time both petitioner and his original trial attorney testified. Margarito Pina, the co-indictee, was subpoenaed but he was not present.

The record reflects that on November 4, 1972, Officer Thompson stopped a car for running a red light in Monahans. Thompson determined that Pina, the driver, was intoxicated and in the course of his investigation he located a brown paper bag on the passenger's side of the car. The bag contained marihuana. Thompson then arrested both Pina and petitioner, who was sitting on the passenger side of the car. At this time the co-indictee, Pina, stated that Alaniz had the bag which contained marihuana when Alaniz got into the car.

Pina and petitioner both retained the same attorney to represent them. Pina has never been brought to trial. Prior to petitioner's trial, Pina wrote a letter to the district attorney stating that the marihuana was his, that petitioner knew nothing of it and that petitioner should be released. The district attorney gave this letter to the defense attorney. Pina did not testify at petitioner's trial and the letter was not introduced.

In the instant application, petitioner contends that his attorney's failure to utilize Pina's letter denied him the effective assistance of counsel. He argues that his attorney could not exploit the letter because of his dual representation which constituted a conflict of interest.

Where a trial attorney has an actual conflict between his client's interest and some competing interest, a defendant is denied the effective assistance of counsel. *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). However, representation of multiple defendants by one attorney is not, per se, such an actual conflict. *Glasser v. United States,* supra; see *Pete v. State,* 533 S.W.2d 808 (Tex.Cr.App.1976).

The test to determine the adequacy of retained counsel is whether there was wilful conduct by counsel, without the defendant's knowledge, which amounts to a breach of a legal duty. *Harrison v. State,* 552 S.W.2d 151 (Tex.Cr.App.1977); *Hunnicutt v. State,* 531 S.W.2d 618 (Tex.Cr.App.1976). In *Stutes v. State,* 530 S.W.2d 309 (Tex.Cr.

App.1975), we applied this test to a situation where it was alleged that retained counsel had a conflict of interest. We held that, where counsel is retained, " 'there is no ineffectiveness on such grounds unless the attorney's representation was fettered or restrained by his commitments to others, and such commitments were unknown to the defendant.' " Accord, *Harrison v. State,* supra. Thus, in order for petitioner to prevail, he must show both an actual conflict and his lack of knowledge of the conflict.

At the November 29, 1977, evidentiary hearing, both petitioner and his attorney testified about petitioner's knowledge of the possible conflict. The attorney testified that petitioner knew he represented Pina. He then testified:

"Q. Well, then you don't remember exactly when you first discussed that letter with Mr. Alaniz. Is that correct?

"A. Well, it would be at one of those pretrials.

"Q. At any rate, it was prior to the trial date of 1973.

"A. Yes, sir.

" *    *    *

"Q. All right. At any rate, do you recall Mr. Alaniz mentioning or suggesting that you should introduce the letter and you refused to try to introduce the letter, or anything of that nature?

"A. Well, the only way you are going to produce the letter, it looks to me like, is to bring the Defendant.

"Q. So you don't recall refusing any request he made other than the fact that he wanted to take the stand and you didn't think he should?

"A. Well, I don't think he insisted, the best I recall."

Petitioner testified that he knew his attorney represented Pina, that he was aware of the letter, that he asked his attorney to introduce the letter at the trial and his attorney refused. Despite some differences, the testimony of both petitioner and his attorney indicated that petitioner knew

of the dual representation and was fully aware of the letter.

Shortly after his arrest Pina told the police that the brown paper bag belonged to petitioner and that petitioner was carrying it when Pina picked him up in his car. The record also reflects that, while petitioner denied forcing Pina to write the letter, he was present at the time it was prepared. Petitioner's testimony at the evidentiary hearing includes the following:

"MR. HOLCOMBE: You did say you saw Mr. Pina write this letter and you saw him sign the letter.

"PETITIONER: Yes, sir, and I read it, too.

"THE COURT: You read it before it was taken out of Mr. Pina's hands?

"PETITIONER: Yeah, because he wanted me to know what he was doing in my favor, in my behalf."

Also, petitioner's trial attorney was asked at the evidentiary hearing if he now thought there was a conflict of interest in the case. He responded:

"A. Well, I didn't at the time because I know a lot of things that you don't know and to divulge it would be a violation of the confidence of me and Mr. Alaniz."

The court then stated that, because of the writ, petitioner had waived the attorney-client privilege and, if petitioner wanted to pursue the question, he would order the witness to answer. Petitioner declined this invitation. In view of the prior inconsistent statement and the circumstances under which the letter was written, it may well have been the best tactical decision not to attempt to introduce the letter (which was not admissible). In addition, the evidence, left only partially developed by petitioner at the hearing, implies that there may have been other valid reasons why the letter was not offered.

The examination of the record of the original trial shows that petitioner was present in the car with a bag of marihuana next to his feet. Counsel timely filed a motion to suppress the marihuana and se-

cured a hearing on his motion. After this issue was decided adversely, petitioner went to trial on the theory that he did not know what was in the bag. Counsel carefully questioned the jury on the voir dire examination and actively cross-examined the State's witnesses and called one defense witness in order to develop his theory. The record reflects that petitioner was not denied the effective assistance of counsel.

The relief requested should be denied.