**UNITED STATES of America,**
**Plaintiff-Appellee.**

v.

**Albert Sidney TUCKER, Jr.,**
**Defendant-Appellant.**

**No. 72–1301.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1972.

Decided Feb. 7, 1973.

Eric D. Christiansen (court appointed), Greeneville, Tenn., for defendant-appellant.

W. Thomas Dillard, Asst. U. S. Atty., for plaintiff-appellee; John L. Bowers, Jr., U. S. Atty., E. D. Tenn., W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., on brief.

Before EDWARDS, McCREE and KENT, Circuit Judges.

McCREE, Circuit Judge.

This appeal requires us to decide whether a sight draft executed in the name of a fictitious person is "falsely made and forged" within the purview of the National Stolen Property Act, 18 U.S.C. § 2314,[1] making the interstate transportation of such a security a federal criminal offense. We determine that it is.

On March 28, 1969, appellant entered the Hamilton National Bank in Knox-

---

1. The statute provides in pertinent part:

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities . . . knowing the same to have been falsely made, forged, altered, or counterfeited;

. . . Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

ville, Tennessee, introduced himself to a vice president in charge of new accounts as W. B. Phillips, an official of the Department of Health, Education and Welfare who had just been transferred to the city, and expressed the intention of opening a checking account. An account was opened with a nominal $10 deposit, and appellant drew a sight draft for $500 on the Bank of America in San Francisco, California, to place in the account. He signed the draft "W. B. Phillips." The Knoxville bank sent the draft for collection to the California bank, which returned it with the notation "No Account in Market and Van Ness." After return of the draft, the Knoxville bank discovered that on March 28, appellant had also drawn an identical sight draft and deposited it in one of its branch banks for credit to the new account. Accordingly, the bank charged the returned draft to the account, thereby cancelling the credit made at the branch bank, and charged $10 for the expense incurred in opening the account, ordering a check book, and transmitting the draft for collection. The bank lost no funds.

A one-count indictment was returned on November 19, 1969, charging that appellant, with unlawful and fraudulent intent, caused to be transported in interstate commerce "a falsely made and forged security" in violation of 18 U.S.C. § 2314. Tucker was arrested on May 29, 1971, and the District Court ordered him to provide handwriting exemplars of the signature "W. B. Phillips" to the Government. Appellant complied when the court threatened to enforce this order by civil contempt proceedings. On December 9, 1971, appellant was tried and convicted by a jury. He received a five-year sentence.

Appellant contends on appeal that the draft was not a "falsely made and forged" security because the name "W. B. Phillips" was not that of another genuine person.[2] He argues that, when a maker or drawer signs a fictitious name to an instrument, he does not commit the offense of forgery as he would if he should write the signature of a real person without authority. Appellant relies upon United States v. Greever, 116 F. Supp. 755 (D.C. Cir. 1953), in which a defendant who signed a check drawn on a non-existent account with a fictitious name by which he was known to the payee was held not to have caused the transportation of a falsely made and fraudulent security within the purview of 18 U.S.C. § 2314. That court stated that it was uniformly held that, when a check is drawn by a maker in his own name upon an existing bank in which he has no funds, its transportation is not within the terms of the Act. The court in *Greever* relied upon Greathouse v. United States, 170 F.2d 512 (4th Cir. 1948), which exonerated a person who signed checks with his own name as agent of a fictitious company which had no bank account.

However, the Fourth Circuit in a subsequent decision has limited *Greathouse* to the situation where the defendant signs his *own* name while misrepresenting some other fact extrinsic of the document involved in the transaction. United States v. Metcalf, 388 F.2d 440 (4th Cir. 1968). The court in *Metcalf* stated that it followed the "broad rule" that one who signs a check or other paper with a fictitious name that he represents to be his own is guilty of forgery if he acts with fraudulent intent. *See also* United States v. Bales, 244 F.Supp. 166 (E.D.Tenn.1965). It described the "narrow rule" as requiring that the false signature appear to be the act of someone other than the person actually making it. 388 F.2d at 442. *See generally* Annos., 49 A.L.R.2d 852, 4 A.L.R.Fed. 793.

In these decisions, the courts regarded the terms "falsely made" and "forged"

---

2. We observe that the statute describing the offense is worded in the disjunctive and that this issue would not be presented if the indictment had omitted the reference to forgery and had charged only that the security had been falsely made.

as distinctive. We prefer not to align this circuit with either the broad or the narrow view of forgery. The relevant part of the statute is written in the disjunctive, and it appears that the words "forged, altered, or counterfeited" are intended merely to describe some of the ways in which a security may be "falsely made." In fact, it may be that the quoted language was not even intended to describe discrete methods of creating a false security because a dictionary definition of "forge" is "to make or imitate falsely,"[3] and, as so defined, "forge" is synonymous with "falsely made." Also, "forge" and "counterfeit" are synonymous in common usage, and thus the statute may represent another example of legal boilerplate where words are used "trippingly on the tongue" in statutory tautology.[4]

Accordingly, we hold that the statute punishes the unlawful or fraudulent transportation in commerce of any falsely made security, and that the words "forged, altered or counterfeited" are merely descriptive of the manner in which a security may be deprived of authenticity. It will suffice for an indictment merely to allege that the security was falsely made. A defendant may require specific information about the technique employed to make the security false by demanding a bill of particulars as authorized by Fed.R.Crim.P. 7(f). Under this construction, so long as a defendant is fairly apprised of the offense for Sixth Amendment purposes, conviction will be upheld if the security is in fact falsely made, whether forged, altered, or counterfeited in a narrow technical sense.[5]

---

3. Webster's Third International Dictionary.

4. E. g., 18 U.S.C. §§ 471 (". . . falsely makes, forges, counterfeits, or alters any obligation or security of the United States . . ."); 472, 473 (semble); 478 (". . . falsely makes, alters, forges, or counterfeits any bond . . . of any foreign government . . ."); 479, 480, 482, 483 (semble); 485 (". . . falsely makes, forges, or counterfeits any coin . . ."); 490 (semble); 493 (". . . falsely makes, forges, counterfeits or alters any note, bond, debenture . . ."); 494, 495 (semble); 497 (". . . falsely makes, forges, counterfeits, or alters any letters patent . . ."); 499 (". . . falsely makes, forges, counterfeits, alters, or tampers with any naval, military, or official pass . . ."); 500 (". . . falsely makes, forges, counterfeits, engraves, or prints any order . . . purporting to be a money order . . ."); 506 (". . . falsely makes, forges, counterfeits, mutilates, or alters the seal of any department . . ."); 507 ("falsely makes, forges, counterfeits, or alters any instrument . . . purporting to be, an abstract . . . of the . . . registry . . . of any vessel . . ."); 508 (". . . falsely makes, forges, or counterfeits [transportation requests of the Government]"); 1426 (". . . falsely makes, forges, alters or counterfeits [naturalization or citizenship papers]"); 1543 (". . . falsely makes, forges, counterfeits, mutilates, or alters any passport . . .").

5. In *Fredrick v. United States*, 163 F.2d 536, 544 (9th Cir.), cert. denied, 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360 (1947), the court was concerned with an information which charged the crime of possessing "counterfeit *and* forged ration coupons" (emphasis supplied). The statute was written in the disjunctive, "counterfeit *or* forged" (emphasis supplied). The court in *Fredrick* regarded the discussion of the semantics of "counterfeit" and "forged" as wholly irrelevant. It quoted with approval *Crain v. United States*, 162 U.S. 625, 636, 16 S.Ct. 952, 955, 40 L.Ed. 1097 (1896):

> The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor for a period of not less than five years nor more than ten years, or by imprisonment for not more than five years and a fine of not more than one thousand dollars. We perceive no sound reason why the doing of the prohibited thing in each and all of the prohibited modes may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused who pleads not guilty to the charge contained in a single count, for a judgment on a general verdict of guilty upon that count will be a bar to any

Our holding appears to be in accord with the statutory purpose of making guilt or innocence turn upon whether the actor wrongfully intended to place into commerce a falsely made document instead of focusing upon the precise method by which its lack of authenticity was effected.

In this appeal, Tucker caused to be transported in commerce a sight draft apparently drawn by a W. B. Phillips, an official of the Department of Health, Education and Welfare. This draft was falsely made. The jury heard his defense that he had assumed the name of Phillips in order to secure employment and that it was another name by which he had been known for three years. It rejected this defense.

Appellant also contends that the order requiring him under penalty of punishment for civil contempt to furnish handwriting exemplars violated his rights under the Fourth and Fifth Amendments. The Fifth Amendment claim has been resolved against appellant by controlling authority. Gilbert v. California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); United States v. King, 415 F.2d 737, 739 (6th Cir.), cert. denied, 396 U.S. 974, 90 S.Ct. 465, 24 L.Ed.2d 443 (1969); *see* United States v. Doe, 457 F.2d 895, 896 (2d Cir. 1972), stay granted, 405 U.S. 984, 92 S.Ct. 1243, 31 L.Ed.2d 450 (1972); United States v. Doe, 405 F.2d 436, 438–439 (2d Cir. 1968). The Fourth Amendment claim is without merit because at trial there was no dispute about appellant's execution of the instrument. It was witnessed by the vice president in whose presence it was accomplished and the vice president testified to this fact without contradiction at the trial. Appellant also freely admitted his execution of the instrument. Accordingly, the admission of the exemplars and the testi-mony of the handwriting expert relative thereto in order to prove execution of the sight draft was unnecessary and, if erroneous, was error harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment is affirmed.

---

further prosecution in respect to any of the matters embraced by it.

The same proposition was quoted with approval in Pines v. United States, 123 F.2d 825 (8th Cir. 1941); and Hall v. United States, 372 F.2d 603, 611 (8th Cir.), cert. denied, 387 U.S. 923, 87 S.Ct. 2040, 18 L.Ed.2d 979 (1967).