**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John HAGERTY, Defendant-Appellant.**

**No. 77–5109.**

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1977.

George M. Leppert, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Walter J. Rothschild, Ronald A. Fonseca, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, Circuit Judge, SKELTON, Senior Judge *, and HILL, Circuit Judge.

PER CURIAM:

Appellant Hagerty was convicted in a jury trial of four counts of transportation of falsely made securities in interstate commerce, in contravention of 18 U.S.C. § 2314.

---

* Senior Judge of the United States Court of Claims, sitting by designation.

He was sentenced to serve concurrent three-year prison terms on three of the counts and to three years' probation on the other, to begin upon his release from prison. For the reasons stated below, we affirm.

■ The evidence, viewed in a light most favorable to the government,[1] indicates that appellant utilized a bank draft scheme to defraud four Louisiana financial institutions.[2] Generally speaking, he would open an account with a customer bank draft from a local bank. However, the draft would actually be on an out-of-state bank account of either a fictitious individual or an individual who had not authorized the draft. Consequently, the draft would be returned unpaid to the institution, which had already paid appellant on the basis of the draft.

Appellant first contends that the trial court erred in refusing to grant his motion for a directed verdict of acquittal, on the ground that his actions did not constitute an offense under § 2314. The statute provides in pertinent part that it is a felony to transport in interstate commerce "any falsely made, forged, altered, or counterfeited securities . . ., knowing the same to have been falsely made, forged, altered, or counterfeited . . . ." The term "securities" is defined in § 2311 to include drafts.

■ It is plain that the drafts in this case were neither altered nor counterfeited within the meaning of those terms. *See Pines v. United States*, 123 F.2d 825, 828 (8th Cir. 1942). Moreover, since appellant signed his own name to the instruments, there was no forgery under the so-called "narrow rule" of forgery that apparently applies in this Circuit. *See Hubsch v. United States*, 256 F.2d 820 (5th Cir. 1958). Appellant argues that the terms "forged" and "falsely made" are synonymous and that there can thus be no conviction because

there was no forgery. This contention is untenable in light of our recent decision in *United States v. Huntley*, 535 F.2d 1400 (5th Cir. 1976), *reh. en banc denied*, 540 F.2d 1086, *cert. denied*, 430 U.S. 929, 97 S.Ct. 1548 (1977), 51 L.Ed.2d 773 in which we held that forgery and false making constitute two distinct acts under § 2314. There the Court said:

> We think it apparent that the purpose of the term "falsely made" was to broaden the statute beyond rigorous concepts of forgery and to prohibit the fraudulent introduction into commerce of falsely made documents regardless of the precise method by which the introducer or his confederates effected their lack of authenticity.

535 F.2d at 1402. *See also United States v. Tucker*, 473 F.2d 1290, 1294 (6th Cir.), *cert. denied*, 412 U.S. 942, 93 S.Ct. 2783, 37 L.Ed.2d 402 (1973).

■ In the instant case, the drawee information on the drafts was either fictitious or unauthorized. Although Hagerty signed his own true name, he falsely made the security by filling in the drawee information without authorization or by doing so with fictitious names of businesses or individuals. These actions are obviously within the meaning of "falsely made" as defined by this Court in *Huntley*. The district court's analysis of this point is particularly cogent:

> [Because] the nature of a draft is a request for payment from another's account, such a request should be based upon a real or believed obligation of the obligor to pay to the maker of the draft. The making of a draft with the knowledge that there is no obligation and/or no actual person or entity by whom it is owed would tend to falsify the nature of the instrument in the same sense that a check is falsified when a check is drawn in another person's name either real or fictitious.

---

1. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

2. Three were "homesteads," or savings and loan associations, in the New Orleans area: Citizens Homestead, Greater New Orleans

Homestead, and Security Homestead. The fourth was Metairie Bank, which is located in a New Orleans suburb. It is significant that appellant primarily utilized homesteads, for they are not accustomed to handling drafts.

Ruling on defendant's motion for directed verdict of acquittal, Record at 114.

Appellant also argues that the district court erred in denying his motion for a new trial on the basis of newly discovered evidence. Only in rare cases will this Court reverse the district court's denial of a motion for new trial, and then only when abuse of the court's discretion is shown. *United States v. Hamilton*, 559 F.2d 1370, at 1373 (5th Cir. 1977) [1977]; *United States v. Littlepage*, 465 F.2d 63 (5th Cir. 1971). Before this Court will find such an abuse, the motion for new trial based on newly discovered evidence must disclose: (1) that the evidence is newly discovered and was unknown to defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *United States v. Crane*, 445 F.2d 509, 519 (5th Cir. 1971); *United States v. Hudson*, 387 F.2d 331, 333 (5th Cir. 1968); *United States v. Rachel*, 473 F.2d 1338, 1343 (5th Cir.), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2750, 37 L.Ed.2d 154 (1973).

Appellant failed to meet this four-pronged test. There is nothing to indicate that the evidence, particularly a letter written by an attorney who was said to represent one of the drawees, was unknown to appellant at time of trial. Moreover, the attorney denied having written or signed the letter. This evidence along with other material purporting to identify another drawee, is also immaterial, for proof that a drawee did in fact exist hardly suggests that appellant possessed the requisite authority to prepare the drafts. Regarding evidence to contradict a drawee's testimony that he had not authorized a draft, suffice it to say that this evidence would have merely discredited or impeached the witness and would not have satisfied the second element of the test. Finally, none of this evidence would have resulted in an acquittal, and there has been no showing of due diligence by appellant.

The judgment is AFFIRMED.