831 F.2d 1064
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin SAILOR, Defendant-Appellant.
 No. 86-1845.
 United States Court of Appeals, Sixth Circuit.
 Oct. 29, 1987.
 
 Before KEITH and MILBURN, Circuit Judges, and CLIFTON GEORGE EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-Appellant Alvin Sailor appeals from his jury conviction for interstate transportation of falsely made securities in violation of 18 U.S.C. Sec. 2314. For the reasons set forth below, we AFFIRM his conviction.
 
 
 2
 On April 9, 1986, defendant was charged in a seven count indictment with interstate transportation of falsely made securities. After a six-day jury trial, he was found guilty of counts two through six of the indictment. Judge Cook for the United States District Court for the Eastern District of Michigan sentenced defendant to concurrent three year terms on counts two through six. As to count seven, defendant was sentenced to a suspended sentence of three years to run consecutive to the concurrent terms on counts two through six. Defendant filed a timely notice of appeal.
 
 
 3
 In December 1976 and November 1981, a total of 620 American Express money orders in blank form were stolen from three different drugstores in Michigan. The dollar amounts on the money orders were subsequently imprinted by an imprinting machine owned by Mr. Jerry Spencer. Spencer, who had paid $10.00 a sheet for the stolen blank money orders, sold the money orders to defendant for $75.00 each. Defendant watched Spencer using the imprinting machine on the money orders defendant purchased.
 
 
 4
 In two days of transactions in these money orders, defendant negotiated forty of them at one Michigan National Bank branch. After Michigan National Bank officials and others informed him that the money orders had been stolen, defendant continued to endorse and distribute them to others. Defendant used the money orders to pay his rent, other bills, and commissions to people who worked for him in his jewelry business. When an FBI agent interviewed him about the money orders, defendant stated that he had received them from customers in the course of his jewelry business.
 
 
 5
 Defendant-appellant essentially makes three allegations of prosecutorial error during his trial. First, he argues that three of the jury instructions incorrectly stated the law or were misleading, resulting in prejudice to him. Second, he argues that the government's rebuttal argument improperly denigrated him and shifted the prosecution's burden of proof. Finally, defendant urges that the trial court abused its discretion in permitting the government to present evidence of his prior misconduct and conviction. We find no merit in defendant's arguments.
 
 I.
 
 6
 The three jury instructions to which defendant objects are:
 
 Jury Instruction No. 13:
 
 7
 "A money order is 'falsely made' if it is lost or stolen in blank form and the amount, the sender's name, or the name of the payee is filled in or imprinted on the money order by someone not authorized to do so."
 
 Jury Instruction No. 21:
 
 8
 "The element of knowledge may be inferred from proof that the defendant deliberately closed his eyes to what would otherwise be obvious. The knowledge requirement may be satisfied also if you find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth."
 
 Jury Instruction No. 44:
 
 9
 Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances, shown by the evidence in the case, that the person in possession knew the property had been stolen. Ordinarily, the same inference can reasonably be drawn from a false explanation of recently stolen property.
 
 
 10
 As to Jury Instruction No. 13, defendant relies upon Gilbert v. United States, 370 U.S. 650 (1962) to argue that his mere completion of the blank money orders did not satisfy the element that the money orders were "falsely made," and that the jury instruction permitted the jury to convict him even if he had received the money orders in good faith. In Gilbert, however, the Supreme Court construed only the scope of the term "forgery" under 18 U.S.C. Sec. 495, not the meaning of the term "falsely made." "Falsely made" and "forged" are two different acts under Sec. 2314. United States v. Tucker, 473 F.2d 1290, 1292 n. 2 (6th Cir.), cert. denied, 412 U.S. 942 (1973); United States v. Hagerty, 561 F.2d 1197, 1199 (5th Cir.1977). In 18 U.S.C. Sec. 2314, Congress broadened the statutory offense beyond mere forgery, "making guilt or innocence turn upon whether the actor wrongfully intended to place into commerce a falsely made document instead of focusing upon the precise method by which its lack of authenticity was effected." Tucker, 473 F.2d at 1294; Hagerty, 561 F.2d at 1199.
 
 
 11
 Here, although defendant signed his own true name on the money orders (and therefore did not "forge" them), he "falsely made" the securities by filing in the drawee information without authorization. Id. Thus, where "[t]he money orders were not, at the time of the thefts, evidence of an obligation on the part of the issuing company .. the insertion of the necessary information on the blank money orders constituted a false making within the meaning of the statute." United States v. Smith, 426 F.2d 275, 276 (6th Cir.), cert. denied, 400 U.S. 868 (1970). Jury Instruction No. 13 was therefore proper.
 
 
 12
 As to Jury Instruction No. 21, defendant argues that this instruction on "willful blindness" was inapposite to the factual situation of the case because it did not take into account his evidence that he had tried to authenticate the money orders and that they appeared facially valid. Defendant objected and requested an alternate instruction, which the court subsequently gave:
 
 
 13
 The element of knowledge my be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. The finding beyond a reasonable doubt of the conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, the defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. However, you cannot find guilty knowledge unless you also find that the defendant was aware of the high probability that the securities were falsely made and that he acted with a conscious purpose to avoid learning the truth about the securities.
 
 
 14
 It is entirely up to you, as to whether you find any deliberate closing of the eyes and the inference to be drawn from any such evidence.
 
 
 15
 A showing of negligence or mistake or even foolishness is not sufficient to support a finding of willfulness or knowledge.
 
 
 16
 (Emphasis supplied). Even though defendant won this supplemental version of the jury instruction, he argues that instruction should have taken into account his evidence. We disagree.
 
 
 17
 In a long line of cases, the Sixth Circuit has consistently upheld the use of such an instruction as an accurate statement of the law where the instruction did not even contain the additional modifying language that Judge Cook here agreed to at the defendant's insistence. See, e.g., United States v. Lawson, 780 F.2d 535, 542 (6th Cir.1985); United States v. Holloway, 731 F.2d 378, 380-81 (6th Cir.), cert. denied, 469 U.S. 1021 (1984); United States v. Gullett, 713 F.2d 1203, 1212 (6th Cir.1983), cert. denied, 464 U.S. 1069 (1984); United States v. Seelig, 622 F.2d 207, 213 (6th Cir.), cert. denied, 449 U.S. 869 (1980); United States v. Smith, 561 F.2d 8, 13 (6th Cir.), cert. denied, 434 U.S. 958, (1977). Accordingly, we hold that the instruction on deliberate ignorance was not erroneous.
 
 
 18
 Finally, as to Jury Instruction 44, defendant argues that this instruction regarding the possession of recently stolen property was inconsistent with the facts in that not all of the money orders were "recently stolen." Here again we find no fault with the contested instruction.
 
 
 19
 That some of the money orders were stolen in December, 1976, and were not therefore "recently stolen" is not compelling--the jury instruction simply did not apply to such money orders. Instead, by its express terms, the instruction only applied to the money orders which had been recently stolen--in November, 1981.
 
 
 20
 Defendant also argues that inclusion of this instruction caused the jury to draw an inference that the defendant knew that the money orders were stolen because he was in possession of them, and for this reason should not have been included. Yet, both the Supreme Court and the Sixth Circuit have held such an instruction proper. As the prosecution noted, in Barnes v. United States, 412 U.S. 837, 843 (1973), the Supreme Court identified the strong historical basis for such an instruction and described it as "a traditional commonlaw inference deeply rooted in our law. For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." The Barnes Court held that this inference satisfied the reasonable doubt standard and comported with due process. Id. at 844-46. See also United States v. Jennewein, 580 F.2d 915, 916 (6th Cir.1978) (instruction upheld with caveat that inference of knowledge cannot be extended to inference that defendant participated in theft). Thus, the district court properly instructed the jury in this case.
 
 II.
 
 21
 Defendant's next argument is that the prosecutor's closing argument had the effect of shifting the burden of proof and unfairly prejudicing the defendant. The prosecutor closed as follows:
 
 
 22
 You know, as I listened to the argument that Mr. Ziolkowski has made on behalf of the defendant, and as I have reviewed the statements, the stories that Mr. Sailor told to the agent who interviewed him on the three occasions that he was interviewed, I am reminded of something I learned about in a high school civics class some years ago, a technique, a propaganda technique called the big lie. I don't know if any of you ever heard of that before, but it is a technique that was used or has been used by certain propagandists.
 
 
 23
 The district court overruled the defendant's objection that the prosecutor's argument was "outside the scope of the evidence," agreeing instead with the prosecutor that the comments were a "refer[ence] to ideas and concepts that the jury can use in approaching the evidence."
 
 
 24
 It is generally accepted that a prosecutor may present his theory of the case to the jury so long as it is based on the evidence produced at trial and the reasonable inferences, deductions or analogies that may be drawn from that evidence. United States v. Robinson, 651 F.2d 1188, 1196 (6th Cir.), cert. denied, 454 U.S. 875 (1981); United States v. Bess, 593 F.2d 749, 753 (6th Cir.1979). It is clear that, as Judge Cook noted, the prosecutor's rebuttal argument was proper as it provided the jury an analytical framework from which it could view the evidence.
 
 
 25
 Moreover, the closing argument is a notoriously adversarial moment in the trial; a judge will accord a wider latitude for argument here than in other parts of the trial. Moreover, this court has held that one remark by the prosecutor, standing alone, is insufficient to justify a reversal of a criminal conviction. United States v. Davis, 809 F.2d 1194, 1209 (6th Cir.1987). The prosecutor's reference to "the big lie" was simply not reversible error.
 
 
 26
 Defendant also argues that the prosecutor's closing remarks had the effect of shifting the burden of proof to the defendant. The prosecutor argued that defendant "could have produced some invoices, bills of sale" to substantiate his story that he received the money orders in good faith from his clientele in the course of his business. Defendant moved for a mistrial, but Judge Cook denied the motion, finding that the prosecutor's comments did not shift the burden of proof, especially since the court had amply and fairly instructed the jury several times with respect to the prosecution's burden of proof. Since a trial court's decision to grant or deny a mistrial is reviewable only for an abuse of discretion, Illinois v. Somerville, 410 U.S. 458, 462 (1973); United States v. Johnson, 584 F.2d 148 (6th Cir.1978), cert. denied, 440 U.S. 918 (1979), and since the court gave eminently fair instructions as to the burdens of proof, we do not believe the prosecutor's closing argument shifted the burden of proof or was otherwise improper.
 
 III.
 
 27
 Defendant's last contention is that the district court abused its discretion in admitting in evidence the fact that less than sixth months prior to the events leading up to his conviction, defendant had admitted to and been convicted of the crime of "uttering and publishing." He argues that the evidence was presented as a pretext to show his bad character, and that the probative value of the evidence did not substantially outweigh its prejudicial impact. Although defendant argues separately as to the admissibility of evidence that defendant committed the crime and evidence that he was convicted of the offense, since both issues are within the scope of Fed.R.Evid. 404(b), we address them here together.
 
 
 28
 The prosecution urges that its introduction of evidence of the defendant's prior conviction was for the limited purpose of showing the necessary elements of defendant's knowledge and intent, pursuant to FRE 404(b). Judge Cook agreed: after conducting an evidentiary hearing on the issue, he held that the evidence was admissible as being relevant to the defendant's knowledge and intent. The court concluded that any prejudice which might occur did not substantially outweigh its probative value. The court also gave strict limiting instructions to the jury as to the narrow purpose of the evidence.
 
 
 29
 In United States v. Vincent, 681 F.2d 462, 465 (6th Cir.1982), this Circuit set forth the two-step procedure to be used in analyzing the admissibility of Rule 404(b) evidence: a court must first decide whether the conduct was admissible for a "proper purpose" (as opposed to the improper purpose of showing "character" or "propensity"); and the court must then consider whether the probative value of the evidence outweighed its potential prejudicial effects. For evidence to be admissible for a "proper purpose" under Rule 404(b), it must be: (1) relevant to a matter which is at issue; (2) substantially similar to the charged offense; and (3) reasonably near in time to the charged offense. United States v. Passarella, 788 F.2d 377, 383 (6th Cir.1986); United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985); United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir.1985); United States v. Dabish, 708 F.2d 240, 242-43 (6th Cir.1983).
 
 
 30
 In this case, the prosecution offered overwhelming evidence that defendant had committed the charged offense; the prior crime was similar in nature to the charged offense, both involving intent to defraud; and the two events were proximate in time, within six months of one another. Moreover, defendant concedes that the Sixth Circuit affords the district court broad discretion in making its evidentiary ruling under Fed.R.Evid. 404(b), and has equally broad discretion in balancing probative value against prejudicial impact; United States v. Ebens, 800 F.2d 1422, 1433 (6th Cir.1986), and cases cited therein; Passarella, 788 F.2d at 383; Dabish, 708 F.2d at 242; Vincent, 681 F.2d at 465.
 
 
 31
 Accordingly, the evidence of defendant's prior crime was admissible for the limited purpose of evidence of other crimes, wrongs or acts showing the necessary elements of defendant's knowledge and intent.
 
 
 32
 For the reasons stated above, defendant-appellant's conviction is AFFIRMED.