UNITED STATES of America,
Plaintiff–Appellee,

v.

David OLES and Redonda Lugene
Oles, Defendants–Appellants.

Nos. 92–3045, 92–3046.

United States Court of Appeals,
Tenth Circuit.

June 7, 1993.

Lanny D. Welch, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with him on the brief), Wichita, KS, for plaintiff-appellee.

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, CO, for defendants-appellants.

Before BRORBY and KELLY, Circuit Judges, and BRIMMER,* District Judge.

BRORBY, Circuit Judge.

Appellants, David W. Oles and Redonda Lugene Oles, were convicted by a jury of bank fraud in violation of 18 U.S.C. § 1344(1) and 18 U.S.C. § 2. Appellants engaged in a "check kiting" scheme in which they "created" false bank account balances by juggling checks written on insufficient funds between five banks. They appeal their convictions alleging errors at various stages of the trial. We affirm.

The scheme was orchestrated as follows. Typically, appellants would write a check greater than the balance in one account and deposit it in another account. Prior to the clearing of the check, appellants would de-

---

* The Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation.

posit enough to cover the first check with another bogus check drafted on a third account. Appellants called daily to obtain their account balances, and tracked the progress of the checks so they were constantly aware of when checks were written, deposited and cleared. Because appellants were aware of the exact time frame in which each bank would clear checks, they were able to conduct hundreds of transactions between June 1987, and September 1987, before arousing the banks' suspicions. Eventually, the banks realized the nature of the Oleses' transactions, and one by one closed their accounts. Because Fidelity State Bank of Garden City, Kansas, was the last bank to close the Oleses' account, it was burdened with a negative balance of $266,198.22.

In accomplishing this scheme, the Oleses used different corporate and personal names to establish the five bank accounts. On May 22, 1987, appellants set up the first account at the Fidelity State Bank using the corporate name of Panhandle Grain, whose officers were listed as David Oles and Redonda Cotter. On June 4, 1987, appellants opened the Phoenix Grain account at the First Republic Bank in Ft. Worth, Texas, listing the officers as Redonda Cotter and David Lane. Under the corporate name of Westar Finance, David Oles started an account at Citizens Security Savings in Amarillo, Texas. Appellants also opened accounts for Panhandle Grain and Phoenix Grain at Palo Duro Savings and Loan in Amarillo and Security Pacific Bank in Los Angeles respectively.

The superseding indictment only charged the appellants for bank fraud relating to the First Republic Bank, Citizens Security Savings, and Fidelity State Bank accounts. Evidence regarding the transactions involving the Palo Duro Savings and Loan and the Security Pacific Bank was admitted at trial.

At trial, the government presented at least eight bank employees and two FBI investigators as witnesses who testified as to the Oleses' transactions. Perhaps the most damaging testimony came from James Archer, a business associate of the Oleses, who also participated in the check kiting scheme.

Subsequent to the convictions, the appellants moved for acquittal or in the alternative

for a new trial. The Oleses complained of prosecutorial misconduct, variance between the evidence admitted at trial and the offense charged, error in failing to give the tendered defense instructions, insufficient evidence, and newly discovered evidence. Redonda Oles additionally contended she was prejudiced by ineffective assistance of counsel and improper joinder.

The district court denied the motions for acquittal or in the alternative for new trial. The prosecutorial misconduct contention related to the reference by the prosecutor during closing argument to an outstanding $8.5 million judgment against David Oles. During argument, the court interceded and instructed the issue was irrelevant and was to be disregarded. Upon reviewing the comments in context in the Memorandum and Order, the trial court reasoned the comments were merely a response to Mr. Oles' counsel's contention that Mr. Oles was willing to work out a deal to repay the amount owed to Fidelity State Bank. Thus, the court held that defense counsel opened the door to the outstanding judgment comment, which was nevertheless disallowed. The district court also rejected the Oleses' assertion that evidence relating to the Security Pacific Bank should not have been admitted under Fed. R.Evid. 404(b). The trial court held this evidence was necessary to complete the full story of the charged scheme of bank fraud.

The trial court also refused claims of insufficiency of the evidence, and error in failing to tender certain jury instructions. Redonda Oles' contentions that she was subject to ineffective assistance of counsel and improper joinder were deemed without merit. Finally, the court rejected the Oleses' demands for a new trial based upon alleged newly discovered evidence. The Oleses argued witness James Archer perjured himself on the stand when he testified that he had no deal with the government granting him immunity. The district court found there was no binding arrangement with the government and even if there was the court would not grant a new trial in view of the overwhelming nature of the evidence against the Oleses.

The appellants raise the following issues before this court: 1) whether the district court erred in admitting other act evidence relating to the two banks not listed in the superseding indictment; 2) whether the district court erred in allowing witnesses to testify as to the ultimate issue of law; 3) whether the prosecutor's comments in closing argument were improper justifying reversal; 4) whether the district court erred in denying the motion for new trial based on newly discovered evidence of a plea bargain and perjured testimony; and 5) whether the district court violated the Oleses' right to be present during a key stage in the proceedings and Mrs. Oles' right to counsel of choice.

## ADMISSION OF EVIDENCE RELATING TO TRANSACTIONS WITH BANKS NOT LISTED IN THE INDICTMENT

■ Appellants argue the government first gave notice they intended to introduce other act evidence relating to Security Pacific Bank, Palo Duro Savings and Loan, and Sunwest Bank in Albuquerque, as proof of knowledge, intent, and common scheme or plan under Fed.R.Evid. 404(b). Appellants contend the United States then changed its position and argued the activities were inextricably intertwined with the charged offense when the district court preliminarily indicated that it was inclined to disallow the evidence on the 404(b) ground. In a pretrial hearing the district court ruled that the Security Pacific and Palo Duro evidence was admissible as it was interrelated with the charges in the indictment.[1] Appellants assert the evidence relating to the Security Pacific account should have been excluded as it was extrinsic to the charges because it was not essential to prove the charges, and should have been disallowed under 404(b). We review the admission of evidence under an abuse of discretion standard. *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992).

■ During the trial the government presented evidence that the Oleses orchestrated

transactions between the three banks listed in the indictment and the Security Pacific account. Such evidence included the testimony of an employee of Security Pacific who identified a wire transfer from Fidelity State Bank to Security Pacific, and an employee of First Republic Bank who verified wire transfers from First Republic to Security Pacific.

Evidence relating to Security Pacific was admissible without addressing Fed.R.Evid. 404(b). " 'Rule 404(b) only applies to evidence of acts extrinsic to the charged crime.' " *United States v. Sasser*, 971 F.2d 470, 479 (10th Cir.1992) (quoting *United States v. Record*, 873 F.2d 1363, 1372 n. 5 (10th Cir.1989)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993). "An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted." *Record*, 873 F.2d at 1372, n. 5. The transfers into and out of the Security Pacific account were part of the Oleses' scheme to defraud the listed banks, and therefore were intrinsic to the charged offense. Consequently, a 404(b) analysis "does not apply to other acts which are so 'inextricably intertwined' with the crime charged that testimony concerning the charged act 'would have been confusing and incomplete without mention of the prior act.' " *United States v. Treff*, 924 F.2d 975, 981 (10th Cir.) (quoting *United States v. Richardson*, 764 F.2d 1514, 1521–22 (11th Cir.1985)), *cert. denied,* —— U.S. ——, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991). Because the evidence relating to the Security Pacific account was inextricably intertwined with the appellants' check kiting scheme, the district court properly allowed the admission of such evidence.

## WITNESSES' TESTIMONY TO THE ULTIMATE ISSUE

Appellants next contend the trial court erred in allowing testimony relating to the ultimate issue of law, as they claim that two of the witnesses expressed the belief that the Oleses were engaged in check kiting. Fed.

---

1. The court also ruled that evidence relating to similar acts in 1989 involving Sunwest Bank in    Albuquerque would not be admitted.

R.Evid. 704(a) permits a witness to testify about an ultimate issue of fact: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

While testimony on ultimate facts is authorized under Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored. The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case.

*Specht v. Jensen,* 853 F.2d 805, 808 (*en banc*) (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989).

The rationale behind disallowing witness testimony relating to the ultimate issue of law is to ensure the jury receives the applicable law from only one source, the Judge. Although the role of a witness is to produce factual testimony, "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Id.* at 809. "However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case." *Id.* at 810.

Appellants claim the following two witness colloquies implicating check kiting went to the ultimate issue of law and should have been disallowed.[2] The dialogue with Mr. Taylor, employee of First Republic Bank, went as follows:

Q: Did you form an opinion or conclusion as to whether or not there was a kite?

A: I did, but not just myself, anybody else in the bank that came, they got involved with what happened, came to the same conclusion.

Carol Hawkins, fraud investigator for Security Pacific, answered as follows as to why Palo Duro began sending back checks:

Q. Did they [Palo Duro] have a term for what they were worried about?

A. Uncollected funds, yes. They call it a kite.

■ Admission of testimony is usually reviewed for abuse of discretion; however, when no objection is raised at trial to the appealed issue we review for plain error. *United States v. Barbee,* 968 F.2d 1026, 1031 (10th Cir.1992). Objections were made to each of these testimonies, and the court sustained the objection that Ms. Hawkins' response be stricken as hearsay. Counsel for the Oleses, however, did not object that testimony by either witness went to the ultimate issue of law, and therefore we review for plain error.

■ The witnesses neither attempted to legally define check kiting nor explained the elements of a check kiting offense. Because the witnesses merely made references to the term, such testimony is permitted as the answers were factual responses addressing two banks' rationale in closing the Oleses' accounts. We find no plain error in the testimony of these two witnesses.

## PROSECUTION'S ARGUMENT

■ Appellants next contend reversal is warranted because the prosecution made inappropriate comments during closing argument relating to an outstanding $8.5 million judgment. Earlier in the trial, the court held inquiry into whether the existence of such evidence was irrelevant, but admonished defense counsel that further questioning relating to Fidelity State Bank's unwillingness to reconcile would open the door and make the outstanding judgment relevant. On closing argument, counsel for Mr. Oles argued that his client offered to repay the overdraft by offering grain elevators as security. On rebuttal, the prosecution began to argue that the $8 million judgment outstanding against

2. We note that the ultimate issue of law in this case is whether the appellants engaged in bank fraud in violation of 18 U.S.C. § 1344(1), rather than whether the appellants engaged in check

kiting. Certainly, neither of the witnesses testified. to the legal elements necessary to establish bank fraud.

Mr. Oles supported the bank's decision to reject Mr. Oles' offer to reconcile. Upon objection, the court ruled the outstanding judgment was irrelevant and instructed the jury to disregard the potential existence of such judgment. Upon considering the motion for a new trial, the court, after reviewing the comments in context, determined defense counsel indeed opened the door and the prosecutor's comments during rebuttal were permissible. We must determine whether the district court abused its discretion in rejecting the motion for a new trial on this ground. *See United States v. Thompson,* 908 F.2d 648, 650 (10th Cir.1990).

Appellants' contention that the prosecutor's comment during closing argument warrants a new trial is not persuasive. In denying the motion for new trial, the district court relied on the "invited response" rule set out in *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985), holding defense counsel for Mr. Oles opened the door to comments regarding the outstanding judgment by arguing that Mr. Oles attempted to repay his overdraft. We find no abuse of discretion in this determination.

■ Even if we were to find, however, the statement regarding the judgment was improper, the court instructed the jury to disregard it. "The general rule is that the effect of improper evidence may be remedied by admonishing the jury to disregard it and by withdrawing it from evidence." *United States v. Posey,* 647 F.2d 1048, 1053 (10th Cir.1981); *see also Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). We feel the record does not clearly indicate the jury was unable to disregard the court's admonishing instructions.

Moreover, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young,* 470 U.S. at 11, 105 S.Ct. at 1044. Assuming the impropriety of the prosecutor's comment, "we must [review] the improper remark [within] the context of the entire record before the jury." *United States v. Espinosa,* 771 F.2d 1382, 1401 (10th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). When reviewing the prosecutor's

comment in context, we consider the strength of the evidence against the defendant, whether curative instructions were given, and whether the prosecution was responding to an attack made by defense counsel. *Hopkinson v. Shillinger,* 866 F.2d 1185, 1210 (10th Cir.1989). Because such mitigating factors are present in this case, the prosecutor's comment did not affect the "fundamental ability of the jury to weigh the evidence fairly." *Id.* For the aforementioned reasons, the district court did not abuse its discretion in denying the request for a new trial.

■ Appellants also assert the prosecution's statement that a witness, Mr. Archer, would be indicted for bank fraud on another day was a personal opinion referencing facts not in evidence and therefore constituted plain error mandating reversal. Appellants made no objection to the statement so we apply a plain error standard of review. *United States v. Santiago,* 977 F.2d 517, 520 (10th Cir.1992). Taken in context, the statement was not error as the prosecution was merely emphasizing that the Oleses were on trial, not the government witness Mr. Archer.

## NEWLY DISCOVERED EVIDENCE

■ Appellants contend a new trial should have been granted on the basis of newly discovered evidence that witness James Archer had entered into an agreement with the government prior to trial and therefore his testimony was perjured. Appellants rely on the deposition comments of Mr. Archer's attorney in a subsequent matter to demonstrate that Mr. Archer did indeed have an immunity agreement with the government. In the deposition, Mr. Archer's attorney related he had indications from the Albuquerque United States Attorney's Office that no indictment regarding Mr. Archer would be forthcoming from Kansas in relation to the activity there. He further stated he communicated this information to Mr. Archer prior to the Oleses' trial. Again, we review the district court's denial of a motion for new trial for abuse of discretion. In this case, the district court conducted a hearing to deter-

mine whether a new trial was warranted. The court found "[t]here was not then, nor is there now, any evidence of a deal between the government and Archer."

In a hearing regarding a motion for a new trial, the court's findings of fact are reviewed for clear error. *See United States v. Freeman,* 816 F.2d 558, 561 (10th Cir.1987); Fed. R.Civ.P. 52(a). In testifying at the hearing for the motion for new trial, two United States Attorneys as well as Mr. Archer's attorney assured the court that no immunity or plea agreement had been arranged between the government and Mr. Archer. Appellants present no substantiated evidence demonstrating the existence of a government deal. Because appellants submitted only indirect evidence of an immunity agreement, the deposition testimony of Mr. Archer's attorney, we hold the district court's finding was not clearly erroneous. It is therefore unnecessary to engage in an analysis to determine whether the allegations of such newly discovered evidence warrant a new trial.

## RIGHT TO BE PRESENT AND RIGHT TO COUNSEL OF CHOICE

On July, 10, 1990, approximately two weeks prior to trial, the court met with Mrs. Oles' current and prospective counsel to determine whether court appointed counsel would withdraw, whether retained counsel would enter an appearance, and whether another continuance would be necessary. At the meeting, potential retained counsel for Mrs. Oles indicated to the court that he was not getting in the case, and he had never entered an appearance. Appointed counsel's motion to withdraw was denied and the trial proceeded as scheduled. Appellants contend they were entitled to be present for this meeting and were prejudiced by their absence.

■ Appellants rely on Fed.R.Crim.P. 43(a), which states: "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." It is well settled the defendant has a due process right to be present at any stage of

the trial "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (citing *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). "[D]ue Process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667 (quoting *Snyder,* 291 U.S. at 108, 54 S.Ct. at 333). Appellants argue the hearing was a critical stage of the trial. The question of whether a defendant had a right to be present at a stage of trial is subject to de novo review. *Larson v. Tansy,* 911 F.2d 392, 394 (10th Cir.1990).

■ No substantive matters relating to the bank fraud charges were discussed at the hearing in question. The meeting involved nothing more than potential retained counsel informing the Judge that he did not intend to enter an appearance on behalf of Mrs. Oles. Thus, the Oleses' absence did not impinge on their opportunity to defend against the bank fraud charges, or affect the fairness of the entire trial. Consequently, the preliminary hearing was not a critical stage of trial, but instead would more accurately be classified as an administrative conference unrelated to any issues at trial. Because appellants failed to establish that their presence at this hearing would contribute to the fairness of the overall proceeding, it is unnecessary to resolve whether they suffered prejudice from their absence. *See Stincer,* 482 U.S. at 747 n. 21, 107 S.Ct. at 2668 n. 21.

Additionally, Mrs. Oles argues that the Sixth Amendment provides her the right to counsel of choice. "The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense.'" But, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexora-

bly be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 158–59, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). Mrs. Oles readily admits, "I really think Steve [appointed counsel] was a good attorney too. I didn't want ... you to think that I was picking and choosing my attorney, which I don't know how much of a right that you have to do if you're indigent." The court had previously granted four continuances and was justified in denying a motion to withdraw two weeks prior to trial. Because Mrs. Oles received effective representation by court appointed counsel, there was no Sixth Amendment violation.

Finally, appellants' argument that the failure to transcribe the hearing was a violation of the Court Reporters Act, 28 U.S.C. § 753, is without merit. Section 753(b)(1) requires the recording of "all proceedings in criminal cases had in open court." This hearing was not held in open court and therefore its recording was unnecessary.

Accordingly, the convictions of appellants are **AFFIRMED.**