UNITED STATES of America,
Plaintiff,

v.

William Concepcion SABLAN, and
Rudy Cabrera Sablan,
Defendants.

No. 00–CR–531–D.

United States District Court,
D. Colorado.

Dec. 24, 2001.

## ORDER

DANIEL, District Judge.

THIS MATTER arises out of a potential conflict of interest resulting from a defense attorney's prior representation of a government witness. The issues have been fully briefed by the parties and for the reasons set forth below, the Court has determined that the Office of the Federal Public Defender must be disqualified as counsel for Defendant William Concepcion Sablan (hereinafter referred to as "Defendant").

### I. PROCEDURAL HISTORY

On September 6, 2001, defense counsel filed Defendant William Sablan's Notice of Potential Conflict of Interest, which alerted the Court to a serious conflict of interest relating to defense counsel's representation of William Sablan. The Government filed its response on September 12, 2001, and the Court held a hearing on Defendant's Notice on September 14, 2001. As a result of the information provided at that hearing, the Government filed its Motion to Disqualify the Office of the Federal Public Defender from the Representation of Defendant William Concepcion Sablan on September 19, 2001 (hereinafter referred to as "Government's Motion to Disqualify"). Defendant's co-counsel, Michael G. Katz (hereinafter referred to as "Katz") and Patrick J. Burke (hereinafter referred to as "Burke") filed separate responses to the Government's motion on September 24, 2001, and September 26, 2001, respectively. The Court held a hearing on the Government's Motion to Disqualify on September 28, 2001. At that hearing, the Court granted Burke's oral request for more time to investigate and present additional facts and authority to disqualify Edward Spry (hereinafter referred to as "Spry") as a witness for the Government. Subsequent-

Michael G. Katz, Federal Public Defenders Office, Patrick J. Burke, Patrick J. Burke, Law Offices, Denver, CO, for William Concepcion Sablan.

Forest W. Lewis, Forest W. Lewis, Attorney at Law, Denver, CO, Donald R. Knight, Donald R. Knight, Attorney at Law, Littleton, CO, for Rudy Cabrera Sablan.

Brenda Kay Taylor, Alvin J. LaCabe, United States Attorney's Office, Denver, CO, for U.S.

ly, Burke filed the Brief of William Sablan Regarding the Court's Authority to Strike Edward Spry as a Substantive Witness Against Him on November 16, 2001 (hereinafter referred to as "Defendant's Brief") and the Government filed its Memorandum of Law and Response to Defendant William Sablan's Brief of William Sablan Regarding the Court's Authority to Strike Edward Lee Spry as a Substantive Witness Against Him (hereinafter referred to as "Government's Response") on December 7, 2001. The Court held a hearing on the issues raised in Defendant's Brief on December 18, 2001.

## II. FINDINGS OF FACT

1. On August 21, 1998, the Office of the Federal Public Defender was appointed to represent Spry in Criminal Case No. 98–CR–180 in the United States District Court for the District of Colorado. Katz, the Federal Public Defender for the District of Colorado, was the attorney of record and Assistant Federal Public Defender David M. Conner (hereinafter referred to as "Conner") was assigned to handle Spry's case. Spry entered a guilty plea on January 19, 1999, and he has yet to be sentenced in that case.

2. When Conner resigned from the Office of the Federal Public Defender on February 27, 2000, Assistant Public Defender Susan Cushman took over the representation of Spry. Spry filed a *pro se* "motion for conflict free counsel" and Criminal Justice Act attorney Clifford Barnard (hereinafter referred to as "Barnard") was appointed to represent Spry. At the present time, Barnard is Spry's attorney of record.

3. On November 20, 2000, Katz and Burke were appointed to represent Defendant in the instant case.

4. On August 27, 2001, the Government disclosed to defense counsel an FBI 302 report of an interview with Spry. The report disclosed that Defendant and Rudy Sablan made incriminating statements to Spry in January and February of 2001. Specifically, Defendant allegedly told Spry that "I'd like to do to Johnson what I did to my cellie ... when we killed my cellie we knocked him out and cut his throat ... after we killed him we went crazy and cut him open ..." *See* Government's Motion to Disqualify, p. 6.

5. On August 29, 2001, defense counsel became aware that the Office of the Federal Public Defender had previously represented Spry and alerted the Court to the potential conflict on September 6, 2001, when they filed Defendant William Sablan's Notice of Potential Conflict of Interest.

6. Katz advised the Court at a hearing on September 14, 2001 that as the Federal Public Defender, he was Spry's attorney of record even though Spry's case was assigned to Assistant Federal Public Defender Connor. Katz added:

> I am the person in possession of certain information about Mr. Spry and that to ignore that information and to keep it confidential would be to not fulfill my obligations to William Sablan, my obligation of loyalty to William Sablan, vigorously defend Mr. Sablan and use everything in my knowledge and possession and power to help Mr. Sablan. By the same token, I have the obligation to Mr. Spry to do nothing to interfere with Mr. Spry's attempts to better himself in particular because it's in the very same robbery case that he's still not been sentenced on that we represented him on.

*See* Government's Motion to Disqualify, Attachment 1, pp. 7–8. Further, when asked by the Court if he had a conflict, Katz stated, "if we were at trial or on the day of trial and the government is getting

ready to call Mr. Spry as a witness, then I'd have major problems staying on this case." *Id.* at p. 16.

7. At the same hearing, Katz confirmed that he was aware of Spry's confidential information either through access to case files maintained in the Office of the Federal Public Defender or through conversations between former counsel and Spry and other knowledgeable staff of the Office of the Federal Public Defender and counsel for Defendant. *Id.* at p. 6, ln. 3–10.

8. The Government has maintained throughout the proceedings before this Court that Spry will be called to testify against Defendant. *See e.g.,* Government's Response, Attachment 2, p. 13, ln. 17–21. The Government reaffirmed its intent to call Spry as a witness in this case at the December 18, 2001, hearing before this Court.

9. Defendant did not file a waiver of conflict-free representation of counsel with the Court.

10. At the September 28, 2001 hearing, the Government submitted a letter from Barnard addressed to all counsel regarding the issue of Spry's waiver of a conflict of interest. That letter provides, in relevant part:

> Mr. Spry believes that a conflict of interest does exist since he disclosed confidential information to the office of the public defender and some of that information can now be used against him in the defense's cross-examination of him in the Sablan trial ... Mr. Spry therefore does not waive any conflict of interest created by the federal public defender's dual representation of him and Mr. Sablan.

*See* Government's Exhibit 1, September 28, 2001 Hearing.

### III. ANALYSIS

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to have the effective assistance of counsel." U.S. CONST. amend. VI. This includes both the right to retain counsel of one's own choosing, *United States v. Collins,* 920 F.2d 619, 624–25 (10th Cir.1990), and the right to "representation that is free from conflicts of interest." *United States v. Gallegos,* 108 F.3d 1272, 1280 (10th Cir.1997) (quoting *United States v. Cook,* 45 F.3d 388, 393 (10th Cir.1995)) (citations omitted). However, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *United States v. Oles,* 994 F.2d 1519, 1525–26 (10th Cir.1993) (quoting *Wheat v. United States* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). Upon a showing of serious potential for conflict, a presumption in favor of a defendant's counsel of choice is overcome and the district court may disqualify counsel. *See Wheat,* 486 U.S. at 164, 108 S.Ct. 1692; *United States v. Moscony,* 927 F.2d 742, 749–50 (3rd Cir.1991).

The Government's allegation implicates rules governing standards of conduct for practicing attorneys and attorney-client relationships and thus, the Court is guided by the applicable ethical canons. This Court applies the rules of professional conduct, as adopted by the Colorado Supreme Court, for the applicable standard of professional responsibility. D.C.COLO.LR. 83.6. Colorado Rule of Professional Conduct 1.7(b) provides, "[a] lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client ... unless: (1) the lawyer reasonably believes the repre-

sentation will not be adversely affected; and (2) the client consents after consultation." Colo.RPC 1.7(b). Rule 1.9(c) of the Colorado Rules of Professional Conduct provides, in relevant part, "[a] lawyer who has formerly represented a client in a matter ... shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client ... or (2) reveal information relating to the representation...." Colo.RPC 1.9(c).

■ In reconciling the duties and rights of the parties under the Sixth Amendment and the Rules of Professional Conduct, the Court concludes that the Office of the Federal Public Defender has an actual conflict of interest if Spry testifies in this case. Three attorneys with the Office of the Federal Public Defender represented Spry in Criminal Case No. 98–CR–180. As a result of that representation, the Office of the Federal Public Defender is in possession of confidential information relating to Spry, and moreover, owes continuing obligations of loyalty and confidentiality to Spry. If a member of the Office of the Federal Public Defender attempts to cross-examine Spry in this case, he or she will be unable to impeach him with that confidential information without violating continuing duties to Spry as a former client. The Tenth Circuit has stated that an actual conflict exists if defense counsel is unable to cross-examine a Government witness effectively because the attorney previously represented the Government witness. *United States v. Winkle,* 722 F.2d 605, 610 (10th Cir.1983). Conversely, if a member of the Office of the Federal Public Defender attempts to alleviate the conflict by simply ignoring the confidential information in their possession, the representation of Defendant will be ineffective due to the inability of defense counsel to conduct a thorough cross-examination.

*U.S. v. Gotti,* 9 F.Supp.2d 320, 324 (S.D.N.Y.1998).

■ Recognizing that such a conflict existed in this case, the colloquy at the hearings between the Court and the parties primarily focused on preventing the emergence of the conflict at trial. Although Defendant suggested several options, none permitted defense counsel to attack Spry's credibility, as would be necessary to provide Defendant with adequate legal representation in this case. Most recently, Burke attempted to persuade the Court to strike Spry as a witness under FED.R.EVID. 403 and pursuant to the Court's general authority to strike a witness whose testimony is "incredible or unsubstantial on its face," or "inherently implausible." *See* Defendant's Brief, p. 4. Burke, however, failed to develop evidence or present authorities to justify striking Spry as a witness in this case. The evidence before the Court indicates that Spry's testimony is highly probative and not cumulative, and that each time Spry has come forward with testimony for the prosecution in the past, his proposed testimony was corroborated by independent sources. *See* Government's Response, Attachments 4, 5 and 6. In addition, the authority cited by Burke is inapposite to the facts of this case. The Court finds that the arguments raised by Burke are proper fodder for cross-examination and to strike Spry as a witness before a trial on the merits would be an abuse of this Court's discretion.

While the Court fully recognizes that disqualification is a drastic remedy, it concludes that there is no other option in this case. As the Court views the facts and law which are presently before it, the Court finds that there are no less intrusive remedies available to alleviate the conflict of interest and, therefore, the Office of the

Federal Public Defender must be disqualified from representing Defendant William Concepcion Sablan at trial. Accordingly, it is

ORDERED that the Government's Motion to Disqualify the Office of the Federal Public Defender from the Representation of Defendant William Concepcion Sablan filed on September 19, 2001 is **GRANTED.** It is

FURTHER ORDERED that the Brief of William Sablan Regarding the Court's Authority to Strike Edward Spry as a Substantive Witness Against Him filed on November 16, 2001, which the Court treats as a motion to strike Edward Spry as a witness, is **DENIED.** It is

FURTHER ORDERED that to the extent Patrick Burke affiliates with another death qualified counsel, Mr. Burke is directed to ask said counsel to enter their appearance by **Monday, January 28, 2002.** It is

FURTHER ORDERED that counsel for the parties, including counsel for Rudy Sablan, shall meet and confer and file a status report by **Friday, February 15, 2002,** which proposes, *inter alia,* time frames for hearings and briefing schedules so the case can return to an active pre-trial posture.