**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 26 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

vs.

JANET E. LESTER,

     Defendant - Appellant.

No. 01-3250
(D.C. No. 99-10155-01)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **BALDOCK**, and **KELLY**, Circuit Judges.

     Defendant-Appellant Janet E. Lester was convicted after jury trial on seventeen counts of transportation of stolen securities, 18 U.S.C. § 2314, and ten counts of uttering and possessing forged securities in violation of 18 U.S.C. § 513. The district court sentenced Mrs. Lester to a term of imprisonment of 37 months after applying enhancements for abusing a position of trust and for obstruction of justice. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## Background

Mrs. Lester worked in the position of office manager, and eventually controller, for U-STOR Mid States Management, Inc. (UMMI) in Valley Center, Kansas. UMMI provides management services, including bookkeeping and accounting functions, for sixteen mini-storage properties in Oklahoma, Texas, and Louisiana. Mrs. Lester was responsible for entering income and expense figures for each property and for preparing appropriate financial statements, all on UMMI's computerized bookkeeping system. In addition, she reconciled UMMI's checking accounts and monthly operating statements, and prepared tax reports.

Donald Hayes, UMMI's manager, placed Mrs. Lester in charge of the office when his absence necessitated it and gave her supervisory authority over two part-time employees. Late in 1998, Mr. Hayes became aware that one of the properties showed less income than he expected. After directing one of the part-time employees to investigate the matter, Mr. Hayes learned that Mrs. Lester had understated deposits to checking accounts and overstated outgoing checks. This investigation also led to the discovery that several of the checking account statements and cancelled checks related to the properties were missing. Mr. Hayes's search of Mrs. Lester's trash bag yielded cancelled checks, bank statements, and other documents related to UMMI's checking accounts.

Through this investigation, Mr. Hayes gathered that Mrs. Lester had been

writing herself, and credit card companies with which she had accounts, checks and then covering the shortfall through her control of the bookkeeping duties. She was able to obtain these checks by requesting Mr. Hayes to sign blank checks that she would purportedly use to pay bills on those occasions when he was out of the office. The evidence adduced at trial revealed that Mrs. Lester had used this scheme to write 296 checks to herself or her credit card companies totaling $471,969.08.

The results of this investigation led eventually to the return of a superseding indictment charging Mrs. Lester with seventeen counts of unlawfully transporting a falsely made security, 18 U.S.C. § 2314, eleven counts of uttering and possessing a forged security (the government subsequently dismissed one of these counts by motion), 18 U.S.C. § 513, and eight counts of money-laundering, 18 U.S.C. § 1956(a)(1)(B)(i). After a three-day trial, a jury found Mrs. Lester guilty on all counts of unlawfully transporting a security and of uttering and possessing a forged security, but acquitted her on the money-laundering counts. The resulting sentence was thirty-seven months of imprisonment, three years of supervised release, and restitution.

## Discussion

On appeal, Mrs. Lester asserts the district court erred by: (1) instructing the

jury improperly on the terms "falsely made" and "forged"; (2) refusing to allow Mrs. Lester to invoke her Fifth Amendment right against self-incrimination during cross-examination; (3) denying her motion for a new trial based on the prosecutor's improper expression of opinion on Mrs. Lester's credibility during closing argument; and (4) enhancing Mrs. Lester's sentence two levels for obstruction under United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1.

Jury Instructions

We review jury instructions as a whole and apply a *de novo* standard of review in determining the propriety of an individual jury instruction to which objection was made at the time of trial. United States v. Mullins, 4 F.3d 898, 900 (10th Cir. 1993). We determine whether the jury, considering the instructions as a whole, was misled and will not disturb the judgment unless we have substantial doubt that the jury was guided fairly. Id. (internal citations omitted).

Mrs. Lester was charged with violating 18 U.S.C. § 2314, which states in pertinent part: "Whoever, with unlawful or fraudulent intent, transports in interstate . . . commerce any falsely made, forged, altered, or counterfeited securities . . . knowing the same to have been falsely made, forged, altered, or counterfeited . . . [s]hall be fined . . . or imprisoned not more than ten years, or both." Mrs. Lester claims the district court erred in instructing that "a check may be 'falsely made' if the check was made payable to an unauthorized payee." I R.

Doc. 32 (Jury Instruction No. 14). Instead, Mrs. Lester suggests that the law in this Circuit holds that a document genuine on its face is not made false because of its content or purpose. See Marteney v. United States, 216 F.2d 760 (10th Cir. 1954). This argument is unavailing.

To begin, the holding in Marteney built on the premise that "the words 'falsely made' and 'forged' are homogeneous, partaking of each other." Id. at 763. The Supreme Court rejected just such a construction in Moskal v. United States, 498 U.S. 103 (1990), where it stated that equating "falsely made" with "forged" or "counterfeited" violated "the established principle that a court should give effect, if possible, to every clause and word of a statute." Id. at 109 (internal quotations omitted). Thus, the Court concluded that a "title-washing" scheme, where the perpetrators procured genuine Pennsylvania automobile titles by first obtaining Virginia titles reflecting rolled-back odometer mileage figures, fell within the ambit of transporting "falsely made" securities under § 2314. Id. at 105–06. According to the Court, "[s]uch titles are 'falsely made' in the sense that they are made to contain false, or incorrect, information." Id. at 109. Similarly, we approved a jury instruction that allowed a jury to find an otherwise genuine check to be "falsely made" under § 2314 if it "was drawn on a closed account." United States v. Phillips, 869 F.2d 1361, 1364 (10th Cir. 1988).

In this case, Mrs. Lester was not authorized to complete the checks in

question as she did. She transported checks made payable to unauthorized payees for unauthorized amounts. See United States v. Gartmon, 146 F.3d 1015, 1024 (D.C. Cir. 1998) (affirming conviction under § 2314 for scheme involving checks written to actual individuals, but without authorization). A check completed fraudulently as payable to an unauthorized payee certainly fits within the category of an instrument that is "made to contain false, or incorrect, information." Moskal, 498 U.S. at 109; see also United States v. Hagerty, 561 F.2d 1197, 1199 (5th Cir. 1977) (concluding that "falsely made" includes filling in the drawee information without authorization). In light of these authorities, we conclude that the district court's definition of "falsely made" fairly guided the jury in determining whether Mrs. Lester violated § 2314. As to Mrs. Lester's one-sentence claim that such a construction makes a federal crime of simple embezzlement and thereby over-extends Congressional authority, we deem it waived for want of briefing. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) (arguments inadequately briefed in opening brief are waived).

Mrs. Lester also argues that the district court erred in not adopting her proposed instructions 2, 5, and 6. To the extent she argues that they should replace the district court's "falsely made" instruction discussed above, we reject that argument. To the extent that she claims the district court erred in instructing the jury regarding the term "forged," we note that the district court's instruction

on the term mirrors the exact language used in 18 U.S.C. § 513.  See I R. Doc. 32 (Jury Instruction No. 13).  Thus, her claim that a different definition of "forged" should have been submitted to the jury could only relate to the term as it is used in § 2314.  This argument must fail because the indictment charged Mrs. Lester with transporting "falsely made" securities in violation of § 2314, not "forged" securities.  As such, the district court did not err in refusing to give Mrs. Lester's proposed instructions 2, 5, and 6.

Self-Incrimination

Through direct examination by her counsel, Mrs. Lester testified that many of the checks written to her actually represented bonuses or reimbursements for various expenses.  According to her testimony, Mr. Hayes paid Mrs. Lester this extra money in part to ensure that she not reveal information regarding alleged illicit affairs in which he was engaged.  On cross-examination, the government questioned Mrs. Lester regarding her federal income tax returns and whether she had reported any of the alleged bonuses as income.  The court interrupted the cross-examination and provided Mrs. Lester with warnings similar to those the Supreme Court outlined in Miranda v. Arizona, 384 U.S. 436 (1966), after realizing that her Fifth Amendment right to self-incrimination might be implicated by this line of questioning.

Following a recess to allow both parties to do some research on the issue,

the court refused to allow Mrs. Lester to assert her right against self-incrimination on the ground that she had waived the right to the extent the cross-examination questioning was relevant to issues raised through direct examination. Mrs. Lester's defense counsel moved for a mistrial based on this refusal, but the court denied the motion on the ground that the tax returns provided information that was inconsistent with Mrs. Lester's claims on direct examination that she was entitled to the money.

We review the trial court's evidentiary rulings using an abuse of discretion standard of review.[1] See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141–42 (1997). Mrs. Lester claims that the district court's refusal to allow Mrs. Lester to invoke her Fifth Amendment privilege violated Fed. R. Evid. 608, the last sentence of which reads: "The giving of testimony . . . does not operate as a waiver of the . . . privilege against self-incrimination when examined with respect to matters which relate only to credibility."

While the government's questioning of Mrs. Lester regarding her tax returns clearly implicated her credibility, it is indisputable that the questioning bore directly on her claims that she was entitled to the checks and that they

---

[1]Our review of the record indicates that Mrs. Lester's defense counsel did not make a contemporaneous objection to the court's denial of her Fifth Amendment privilege. Both parties appear to agree, however, that the standard of review is abuse of discretion. Moreover, we would achieve the same result using either plain error or abuse of discretion standards of review.

- 8 -

represented additional income to her. Thus, the questioning did not relate "only to credibility" and no violation of Rule 608 occurred. See United States v. Blankenship, 746 F.2d 233, 238 n.1 (5th Cir. 1984) (noting that Rule 608 "has nothing to do with the scope of a testifying defendant's waiver of the privilege with respect to the crime with which he is charged"). "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." Mitchell v. United States, 526 U.S. 314, 321 (1999). Indeed, a defendant "cannot reasonably claim that the Fifth Amendment gives him . . . an immunity from cross-examination on the matters he has himself put in dispute." Brown v. United States, 356 U.S. 148, 155–56 (1958). We conclude that the questioning of Mrs. Lester regarding her tax returns was well within the scope of cross-examination, related to more than just credibility, and it was therefore not an abuse of discretion for the district court to refuse to allow Mrs. Lester to invoke her privilege against self-incrimination.

Prosecutor's Statements Regarding Mrs. Lester's Credibility

During closing argument, the prosecutor made several statements regarding Mrs. Lester's credibility. On appeal, Mrs. Lester claims that the district court's denial of her motion for a new trial based on the following statements constituted reversible error:

The defendant's story simply doesn't make sense, but not only does it not make sense, it's a lie. You can't believe anything she said. Why? Because she's a liar and she lies under oath . . . .

IV R. Doc. 78 at 377–78.

The defendant has no credibility in this case. One thing that people think of sometimes when you hear an inconsistent story over here and another one up there is asking the question, "Were you lying then or are you lying now?"

Id. at 379.

The district court sustained defense counsel's objection to the first statement, but the record indicates no objection was made to the second statement. The district court did instruct the jury, however, that "[t]he lawyers' statements, objections and arguments are not evidence," and that "[the jury members] are the sole judges of the credibility or 'believability' of each witness and the weight to be given to the witness's testimony." I R. Doc. 32 (Jury Instruction Nos. 4 & 5). Mrs. Lester filed a motion for a new trial based in part upon these statements; the trial court denied the motion in a written order. See I R. Doc. 50.

Where a defendant makes a contemporaneous objection to a prosecutor's closing argument, and subsequently moves for a new trial based, in part, on allegations of prosecutorial misconduct, we review the district court's denial of such motion for an abuse of discretion. United States v. Broomfield, 201 F.3d 1270, 1276 (10th Cir. 2000). Thus, Mrs. Lester's submission that we should adopt a *per se* rule reversing all convictions involving a prosecutor's misconduct

- 10 -

runs contrary to our precedent. See United States v. Hernandez-Muniz, 170 F.3d 1007, 1012 (10th Cir. 1999) ("We have not, however, established that referring to testimony as a lie constitutes per se prosecutorial misconduct."). Our cases hold that improper statements by a prosecutor warrant a new trial only where they influenced the jury's verdict. See Broomfield, 201 F.3d at 1276–77; United States v. Oles, 994 F.2d 1519, 1524 (10th Cir. 1993). Moreover, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context," United States v. Young, 470 U.S. 1, 11 (1985), including a review of "the strength of the evidence against the defendant, whether curative instructions were given, and whether the prosecution was responding to an attack made by defense counsel." Oles, 994 F.2d at 1524.

The government claims that the prosecutor's comments were largely a response to defense counsel's "vicious attacks" on the credibility of its own witness, Mr. Hayes. According to the government, these attacks included statements such as:

> Unless you can say, "I believe everything that Donald Hayes says beyond a reasonable doubt"—and that answer is pretty easy because he's the only one, he's the only one that bolsters that count.

IV R. Doc. 78 at 371–72

One method [to review the evidence] would be look to see whether

- 11 -

or not Mr. Hayes was out of town or present . . . What does that mean? Means you can't trust that testimony, doesn't it?

Id. at 373–74.

Defense counsel's comments do not appear to be vicious and are more akin to requests to the jury to weigh the testimony in light of the other evidence in the case. The government's attempt to justify the prosecutor's comments based on these statements seems farfetched.

Be that as it may, our review of the prosecutor's comments, in the context of the entire case, leads us to conclude that they did not improperly influence the jury. While we do advise the prosecutor to avoid direct accusations of mendacity, "'we are confident that the statements in this case would have been perceived only as commentary on the implausibility of the defendant's story.'" United States v. Robinson, 978 F.2d 1554, 1567 (10th Cir. 1992) (quoting United States v. Garcia, 818 F.2d 136, 143–44 (1st Cir. 1987)). Given that the district court sustained defense counsel's objection, the district court provided jury instructions that cured the improper comments, and the other evidence in the case, we conclude that the prosecutor's comments "did not affect the 'fundamental ability of the jury to weigh the evidence fairly.'" Oles, 994 F.2d at 1524 (quoting Hopkinson v. Shillinger, 866 F.2d 1185, 1210 (10th Cir. 1989)).

Sentencing Enhancement for Obstruction

Mrs. Lester appeals the district court's determination that she had not been

truthful in her testimony, resulting in the district court's application of U.S.S.G. § 3C1.1, an enhancement for obstruction of justice, to increase her total offense by two levels. At sentencing, the district court stated in response to defense counsel's objection to the enhancement:

> [M]y reading is that she had, in fact, testified at an unemployment hearing under oath that the checks were written as bonuses. At trial she took the position that they were not only bonuses but she was writing checks to Mr. Hayes in order to pay for women and so forth that, in fact, he was procuring on the side.
>
> IV R. Doc. 78 at 393.
>
> It's one thing to tell the government to prove it and I think it's quite another thing to make an effort to lead folks down the wrong path. I think in this circumstance that Mrs. Lester did, in fact, cross the line. And if she hadn't had this obstruction I think it certainly would have been within the realm of possibility that she could have received an enhancement frankly for perjury. I'm not satisfied from having heard her testimony at trial that she did, in fact, tell the truth about that situation. And the fact that she claimed bonuses of $120,000 in one year, given the income of these rental units, to me just flies in the face of all reason and common sense. . . . She made an effort to try and mislead and misdirect people . . . .

Id. at 394–395. Because obstruction of justice includes perjured testimony at trial, United States v. Chavez, 229 F.3d 946, 955 (10th Cir. 2000), the district court overruled Mrs. Lester's objection to the two-level sentencing enhancement.

Mrs. Lester asserts that the district court did not clearly state its basis for applying the § 3C1.1 enhancement and that we should remand for resentencing without the enhancement. The Supreme Court stated in United States v.

- 13 -

Dunnigan, 507 U.S. 87, 94 (1993), that perjury occurs when a witness, under oath, "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." To avoid an automatic finding of perjury every time a defendant takes the stand, denies guilt, and is then subsequently found guilty, however, the trial court must make findings independent of the verdict that identify the specific testimony at issue and establish that it constituted perjury. See id. at 95; see also United States v. Weller, 238 F.3d 1215, 1222 (10th Cir. 2001). In reviewing these findings, we defer to the district court's ability to judge the credibility of witnesses and recognize that it was entitled to weigh Mrs. Lester's testimony against other evidence in the record. Weller, 238 F.3d at 1222. Giving the proper deference owed to the district court in making its determination, we conclude that the district provided adequate justification, including Mrs. Lester's prior conflicting statements, to apply the enhancement under § 3C1.1.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

- 14 -